DECISION AND JUDGMENT ENTRY
{¶ 1} Albert Baltzer appeals his convictions for breaking and entering and vandalism stemming from an incident where he and three other students broke into Waterford High School and caused extensive damage to school property. First, Baltzer contends his trial counsel was ineffective because she failed to object to the trial court's erroneous jury instruction concerning the necessary mental state for the offense of complicity to breaking and entering. The state admits the initial instruction, which indicated the mens rea element was "knowingly" rather than "purposely," was improper and joins Baltzer in asking us to reverse his conviction. We agree. Baltzer consistently maintained at trial that he only planned to toilet paper the gym, not cause serious damage to school property. Whether he acted with the necessary culpable mental state to support *Page 2 
a conviction for the offense of complicity to breaking and entering was a central issue at trial. Counsel's failure to object to the improper instruction amounts to a deficient performance. And there is a reasonable probability that had counsel sought a proper instruction, the result of the trial would have been different.
 {¶ 2} Next, Baltzer contends the trial court erred in refusing to instruct the jury on the lesser included offense of criminal damaging as requested because he did not personally cause serious physical harm to the school, a necessary element to the offense of vandalism. We reject this argument because under a complicity theory, the damage caused by others can be attributed to Baltzer. Thus, the evidence introduced at trial does not reasonably support both an acquittal on the charge of complicity to vandalism and a conviction on criminal damaging. The court was not required to give an instruction on criminal damaging.
 {¶ 3} Baltzer also contends his convictions are not supported by sufficient evidence. He points to his statements to investigators and his testimony that he only intended to toilet paper the school as a prank and he only caused minimal damage to the school. The state presented evidence that Baltzer planned with the others to break into the school, rode with them to the school, attempted to conceal his identity along with the others, knew one of them brought brake fluid and spray paint to the school, entered the school after two of them had gained entrance through an air conditioner, was present when they caused serious damage to school property, and personally participated in the destruction of school property. This evidence supported his convictions. *Page 3 
 {¶ 4} Finally, Baltzer contends the trial court erred in ordering him to reimburse the school's insurance carrier and in failing to apportion the restitution amount among all the defendants convicted of breaking and entering and vandalism. Because trial courts are no longer permitted under R.C. 2929.18(A)(1) to award restitution in criminal cases to third parties, we agree the trial court erred in ordering Baltzer to reimburse the school's insurance carrier. However, the trial court did not err in ordering Baltzer to pay restitution to the school for the full amount of economic loss that was not reimbursed by the insurance carrier because that amount was a direct and proximate result of Baltzer's commission of the offense of complicity to vandalism.
 I. Facts {¶ 5} A grand jury indicted Baltzer on one count of breaking and entering, in violation of R.C. 2911.13, and one count of vandalism, in violation of R.C. 2909.05. After Baltzer pled not guilty, the matter proceeded to a jury trial, which produced the following evidence.
 {¶ 6} A custodian with Waterford High School arrived at work on the morning of November 1, 2005, and discovered the school had been vandalized. He called the superintendent, who in turn notified the sheriff's department. The sheriff's deputy who was first to arrive testified about the damages he observed at the school. Someone had toilet papered the gym and the locker rooms, poured brake fluid on the gym floor, discharged fire extinguishers, trashed the locker rooms, spray painted graffiti on the walls, doors, bleachers, and a stage area in the gym, and broken a toilet paper dispenser in the bathroom. Due to the *Page 4 
extent and nature of the damages, detectives with the sheriffs office arrived at the school and began an investigation.
 {¶ 7} Acting on a tip, detectives interviewed Baltzer later that day. After initially denying any involvement, Baltzer admitted his participation and provided detectives with a written confession. The next day when the school principal interviewed Baltzer he gave a version of events that was generally consistent with his statements to the detectives. The principal and detectives who interviewed Baltzer testified at trial about his admissions.
 {¶ 8} According to Baltzer's statements, Travis Skinner and Kevin Guiler approached him at school and asked him if he wanted to help them toilet paper the school gym. On the evening of October 31, 2005, Skinner drove Guiler, Russell Brooks, and Baltzer to the school. Baltzer wore gloves to conceal his identity, while the others wore masks. Skinner brought spray paint, brake fluid, and toilet paper in his backpack. When they arrived, they were unable to enter through the gymnasium door that Guiler had propped open earlier that day. Skinner and Guiler eventually gained entrance to the school and let Baltzer and Brooks in through a door. After all four had entered the school, they went to the third floor, where Skinner discharged a fire extinguisher. Then they went to the library on the second floor, and Brooks and Guiler glued computer "mouse pads" together. Next, the group went to the first floor, and Skinner discharged another fire extinguisher. Then they toilet papered the gym. When they ran out of toilet paper, Baltzer and Skinner went to a bathroom to get more, and in the process, Skinner broke a toilet paper dispenser. After toilet papering the gym and the *Page 5 
locker rooms, Baltzer poured water on the gym floor, Guiler poured pop on the gym floor, and Skinner poured brake fluid on the gym floor. Brooks and Guiler spray painted the stage in the gym, and Baltzer spray painted the bleachers, a wall in the boys' locker room, and a door.
 {¶ 9} The principal also testified that Baltzer claimed he told the group prior to entering the school not to damage anything and told Skinner before he discharged the first fire extinguisher that it was not a good idea.
 {¶ 10} The superintendent testified that the total amount of damage to the school was approximately $15,000, including $9,750.00 to repair the gym floor, $3,977.00 to clean the fire extinguisher dust, and $442.81 for employee overtime. He also testified that the damage to the gym floor was a result of the brake fluid causing the floor to peel up.
 {¶ 11} In his defense, Baltzer testified he went with Skinner, Brooks, and Guiler to the school to toilet paper the gym as a prank. Unable to enter the school as planned, Baltzer waited as Skinner and Guiler gained entrance through an air conditioner. Baltzer wore gloves that night to hide his identity and prior to entering the school knew the contents of Skinner's backpack. He testified, however, that before entering the school he told the others not to break anything. He also testified he did not set off any fire extinguishers and that he told Skinner it was not a good idea. He admitted he stood on stage with Guiler as Guiler spray painted graffiti. Baltzer also admitted he personally spray painted the bleachers, a wall in the boys' locker room, and wrote "fat fuck" on a teacher's door. He testified that he did not pour brake fluid on the floor, but that he poured *Page 6 
a two-liter bottle of pop on the gym floor. Baltzer made no attempt to leave the school or terminate his participation in the incident. He stated he did not intend to cause damage to the school, but that if he would have left the school, he would have had a long walk home.
 II. Assignments of Error {¶ 12} Baltzer raises the following assignments of error:
 First Assignment of Error:
 Defense counsel erred when she failed to timely object to the complicity charge with respect to the offense of breaking and entering.
 Second Assignment of Error:
 The trial court erred when it denied appellant's request to instruct the jury as to criminal damaging. [TR 252-255. 283].
 Third Assignment of Error:
 The trial court's verdict was not supported by sufficient evidence. [TR 294-296].
 Fourth Assignment of Error:
 The trial court erred when it ordered appellant to reimburse the school's insurance carrier. [TR 308].
 Fifth Assignment of Error:
 The trial court erred when it did not apportion the restitution amount among all of the defendants convicted of the breaking and entering and vandalism of the school. [TR 308]. III. Sufficiency of Evidence {¶ 13} In his third assignment of error, Baltzer contends his convictions for breaking and entering and vandalism are not supported by sufficient evidence. He contends the state failed to introduce sufficient evidence to prove his level of *Page 7 
involvement in the commission of the offenses. Because this issue is determinative of whether Baltzer may be retried, we consider this assignment of error first.
 {¶ 14} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citing Jackson v.Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
 {¶ 15} Baltzer was convicted of breaking and entering, in violation of R.C. 2911.13, which states: "(A) No person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein * * * any felony. (B) No person shall trespass on the land or premises of another, with purpose to commit a felony." The underlying felony in this case was the offense of vandalism.
 {¶ 16} Baltzer was also convicted of vandalism, in violation of R.C.2909.05(B)(2), which states: "No person shall knowingly cause serious physical harm to property that is owned, leased, or controlled by a governmental entity * * * [which] includes * * * a school district." "Serious physical harm" means physical harm to property that results in loss to the value of the property of five hundred *Page 8 
dollars or more. R.C. 2909.05(F)(2). If the value of the property or the amount of the physical harm involved is five thousand dollars or more but less than one hundred thousand dollars, vandalism is a felony of the fourth degree. R.C. 2909.05(E).
 {¶ 17} To support a conviction for complicity by aiding and abetting under R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Intent may be inferred from the circumstances surrounding the crime. State v. Johnson,93 Ohio St. 3d 240, 754 N.E.2d 796, syllabus. "`Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.'" Johnson, at 245, quoting State v.Pruett (1971), 28 Ohio App.2d 29, 34.
 {¶ 18} Baltzer's convictions for breaking and entering and vandalism are supported by sufficient evidence. The state presented evidence from which the jury could reasonably conclude that Baltzer supported, assisted, encouraged, or cooperated with Skinner, Brooks, and Guiler and shared their intent to vandalize the school. The evidence presented in this case demonstrated that Baltzer agreed to participate in a plan to break into Waterford High School on the night of October 31, 2005. He rode with Skinner, Guiler, and Brooks to the school, and they all attempted to conceal their identities with gloves or masks. Before entering the school, Baltzer knew Skinner had spray paint and brake fluid with him. Skinner and Guiler broke into the school through an air conditioner and let *Page 9 
Baltzer in through a door. After entering the school, he was present as Skinner discharged the fire extinguishers, which occurred before they toilet papered the gym; yet, he made no attempt to leave the school or terminate his involvement in any way. Rather, he actively participated in further destruction of school property. In addition to toilet papering the gym and the locker rooms, Baltzer personally spray painted the bleachers, a wall, and wrote "fat fuck" on a teacher's door. He also participated in pouring fluid on the gym floor along with Skinner and Guiler. After the incident, Baltzer did not notify authorities about the damage to the school and in fact he initially lied to investigators about his role in the incident.
 {¶ 19} While Baltzer claims his level of involvement was minimal and that he did not personally cause serious physical harm to the school, under Ohio's complicity statute, whoever aids and abets another person in the commission of a crime is guilty of complicity and can be prosecuted and punished as if he were the principal offender. R.C.2923.03(F). It is well established that a complicitor need not personally commit each of the elements to an offense when acting in complicity with another to commit the offense. Baltzer may not have discharged the fire extinguishers or poured brake fluid on the gym floor, but construing the evidence in a light most favorable to the prosecution, he acted in complicity in the commission of the offenses when he supported, assisted, encouraged, or cooperated with the others. Under a theory of complicity, the state was not required to prove that Baltzer personally caused serious damage to the school. Accordingly, we overrule Baltzer's third assignment of error. *Page 10 
 IV. Jury Instructions on Complicity {¶ 20} In his first assignment of error, Baltzer contends defense counsel rendered ineffective assistance of counsel by failing to object to the trial court's erroneous, conflicting, and misleading jury instructions concerning the required mental state for the offense of complicity to breaking and entering. The state concedes the instruction was wrong and asks us to sustain the assignment of error.
 {¶ 21} In order to prevail on a claim of ineffective assistance of counsel, Baltzer must show (1) his counsel's performance was deficient in that it fell below an objective standard of reasonable representation, and (2) the deficient performance prejudiced his defense so as to deprive him of a fair trial. State v. Smith (2000),89 Ohio St.3d 323, 327, 731 N.E.2d 645, citing Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley
(1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. To establish prejudice, Baltzer must show that there exists a reasonable probability that, were it not for counsel's errors, the result of the proceeding would have been different. State v. White
(1998), 82 Ohio St.3d 16, 23, 693 N.E.2d 772; Bradley, at paragraph three of the syllabus.
 {¶ 22} Baltzer was convicted of breaking and entering and vandalism under a theory of complicity. In order to establish complicity to a crime, the state must establish that the accused acted with the culpability required for the commission of the underlying offense. R.C.2923.03. The offense of breaking and entering requires a culpable mental state of "purposely." R.C. 2911.13(A). *Page 11 
"A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A). The offense of vandalism requires a culpable mental state of "knowingly." R.C. 2909.05(B)(2). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 23} The trial court initially gave the jury the following instruction on complicity:
 Complicity. It is the theory of the State that the Defendant acted in concert with others in the commission of an offense. When persons knowingly join together to commit an offense, and the offense is actually committed, each person is guilty of all of the acts performed by all of the persons, the same as each — as each — the same as if each had committed each act personally. Such persons are said to have aided and abetted each other. This means they supported, assisted, encouraged, cooperated with, advised, or incited each other in the commission of an offense.
 The State must prove that the Defendant knowingly aided and abetted others in the commission of each offense, in order for the Defendant to be responsible for the acts of the others involved in that offense.
 {¶ 24} After its initial instruction on complicity, the trial court instructed the jury on the elements of the underlying offense of breaking and entering. Within its instruction, the trial court properly defined the necessary culpable mental state of "purpose." The court then gave the jury the following instruction on the law of complicity concerning the offense of breaking and entering: *Page 12 
 Now, having said that, I need to go back and talk to you again about complicity. In order to be complicit in the offense of breaking and entering, it's necessary that the State prove that the Defendant acted not only knowingly with the others, but purposely as well. And you should remember that when you're deciding whether the Defendant was complicit in the offense of breaking and entering.
 The purpose with which a person does an act is determined from the manner in which it is done, the means used, and all the other facts and circumstances in evidence. It must be established there was present in the mind of the Defendant the specific intention to commit the offense of vandalism.
 {¶ 25} Next, the court instructed the jury on the underlying offense of vandalism and properly defined the necessary culpable mental state of "knowingly."
 {¶ 26} Baltzer contends the trial court erred when it initially instructed the jury that the state must prove that Baltzer "knowingly" aided and abetted others in the commission of "each offense," in order for him to be responsible for the acts of the others involved in that offense. He claims this instruction is erroneous because in order to prove complicity to the offense of breaking and entering, the state must show the defendant acted with the required mental state of purposely, not knowingly. While the trial court later instructed the jury on the necessary mental state for the offense of complicity to breaking and entering, Baltzer claims the court's subsequent instruction did not explain the initial instruction and did not remedy the erroneous instruction.
 {¶ 27} Baltzer argues counsel's failure to object to the erroneous jury instruction relieved the state of its burden to prove each element of the offense beyond a reasonable doubt because there was no way of knowing which of the *Page 13 
two irreconcilable instructions the juror applied in reaching their verdict. See Francis v. Franklin (1985), 471 U.S. 307, 322,105 S.Ct. 1965, 85 L.Ed.2d 344 ("Language that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity. A reviewing court has no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict."). Baltzer also argues the trial court's jury instruction violated his right to a jury trial as guaranteed by the Sixth and Fourteenth Amendments because the jury's verdict may not have been based on the proper elements to the offense.
 {¶ 28} Viewing the jury instructions in their entirety, we conclude they are internally inconsistent, and potentially misleading concerning the proper mental state for the offense of complicity to breaking and entering. The trial court's initial instruction on the general law of complicity states that the state must prove that Baltzer "knowingly aided or abetted" the others in the commission of each offense. The trial court's reference to "knowingly" does not appear to be a reference to the culpable mental state required for the underlying offenses, but rather to that of aiding and abetting itself, i.e., that Baltzer "knowingly" supported, assisted, encouraged, cooperated with, advised, or incited the others in the commission of the crime. However, this instruction is erroneous because in order to establish complicity to a crime, the state must establish that the accused acted with the culpability required for the commission of the underlying offense. This means that the state was required to prove that Baltzer "purposely aided *Page 14 
and abetted" the others in breaking and entering the school. The trial court's general instruction on the law of complicity was erroneous.
 {¶ 29} Furthermore, the trial court's subsequent instruction on the proper mental state for the offense of complicity to breaking and entering did not cure the earlier erroneous instruction. The court did not explain why its prior instruction was improper nor did it advise the jury to ignore it and apply the correct statement of the law.
 {¶ 30} One of the central issues before the jury was concerning Baltzer's mental state, i.e., whether he went there to commit a simple "prank," or alternatively, to seriously damage school property. Thus, trial counsel was deficient for failing to object to the erroneous instruction.
 {¶ 31} Furthermore, trial counsel's failure to object was highly prejudicial to Baltzer. Baltzer consistently maintained that he entered the school with the intent to toilet paper the gym, not cause serious physical harm to school property. Trial counsel's primary argument was that Baltzer did not share the specific intent to vandalize the school, i.e., his culpable mental state was his entire defense. Given that Baltzer's conviction for breaking and entering could have been based on the jury's belief that Baltzer acted "knowingly" rather than "purposely," we cannot say with any sense of confidence that the erroneous and conflicting jury instruction did not affect the outcome of the trial. Therefore, we sustain Baltzer's first assignment of error. *Page 15 
 V. Jury Instructions on Lesser Included Offense {¶ 32} In his second assignment of error, Baltzer contends the trial court erred in refusing to instruct the jury on the lesser included offense of criminal damaging.
 {¶ 33} An offense may be a lesser included offense of another if (1) the offense carries a lesser penalty than the other; (2) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense; and (3) some element of the greater offense is not required to prove the commission of the lesser offense. State v.Deem (1988), 40 Ohio St.3d 205, 209, 533 N.E.2d 294.
 {¶ 34} Baltzer was charged with vandalism under R.C. 2909.05(B)(2). R.C. 2909.06 defines the offense of criminal damaging and states: "No person shall cause, or create a substantial risk of physical harm to any property of another without the other person's consent * * * Knowingly, by any means." The only statutory difference between the two offenses is that vandalism requires serious physical harm, i.e., damages in an amount of five hundred dollars or more, while criminal damaging only requires damages of any amount. Thus, criminal damaging is a lesser included offense of vandalism.
 {¶ 35} A charge on a lesser included offense is required only when the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser included offense.State v. Thomas (1988), 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph two of the syllabus. In making this determination, the trial court must view the evidence in the light most *Page 16 
favorable to the defendant. State v. Campbell (1994), 69 Ohio St.3d 38,47-48, 630 N.E.2d 339.
 {¶ 36} When reviewing a trial court's jury instructions, the proper standard of review for an appellate court is whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion under the facts and circumstances of the case. State v.Wolons (1989), 44 Ohio St.3d 64, 68, 541 N.E.2d 443. The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v. Clark (1994), 71 Ohio St.3d 466, 470,644 N.E.2d 331.
 {¶ 37} Baltzer contends the evidence presented at trial reasonably supported both an acquittal on the offense of vandalism and a conviction on the lesser included offense of criminal damaging because the jury could have reasonably found that he did not personally cause five hundred dollars or more in damages.
 {¶ 38} After reviewing the evidence presented at trial in a light most favorable to Baltzer, we conclude that an instruction on criminal damaging was not warranted. The evidence presented does not support both an acquittal on the offense of complicity to vandalism and a conviction on criminal damaging. The evidence demonstrated that Baltzer participated in a plan with the others to break into the school. He was present during the entire incident and actively engaged in conduct that resulted in the destruction of school property. According to his own testimony, not only did he join the others in toilet papering the gym, he spray painted the bleachers, the boys' locker room and a teacher's door after *Page 17 
Skinner discharged the fire extinguishers, and he participated with Skinner and Guiler in pouring fluid on the gym floor. It is undisputed that the events of that evening resulted in approximately $15,000 in damages to the school. While he may not have personally caused $500 or more in damages to the school, the state proceeded under a theory of complicity and was not required to show that his actions alone amounted to serious physical harm. Under a complicity theory, no reasonable jury could have found Baltzer's conduct resulted in less than five hundred dollars. The jurors' only logical choice was between guilty or not guilty of vandalism. We overrule Baltzer's second assignment of error.
 VI. Restitution {¶ 39} In his fourth assignment of error, Baltzer claims the trial court erred in ordering him to reimburse the school's insurance carrier. The state again candidly concedes error. In his fifth assignment of error, Baltzer claims the trial court erred when it did not apportion the restitution amount among all of the defendants convicted of the breaking and entering and vandalism of the school.
 {¶ 40} The trial court ordered Baltzer to make restitution to Indiana Insurance, the insurance carrier for Wolf Creek Local School District, in the amount of $13,869.78 and to Wolf Creek Local School District in the amount of $1,000, the amount that was not reimbursed by the insurance carrier.
 {¶ 41} Under former R.C. 2929.18(A), a trial court imposing a sentence upon a felony offender could require the offender to pay restitution to reimburse "third parties for amounts paid to or on behalf of the victim." 148 Ohio Laws, Part IV, 8674, 8767. On June 1, 2004, the legislature amended R.C. 2929.18 to *Page 18 
delete all references to restitution for third parties. See 2003 Sub. H.B. No. 52. As a result, for offenses committed after June 1, 2004, trial courts are no longer permitted to award restitution in criminal cases to third parties, including insurance carriers. State v.Kreischer (2006), 109 Ohio St.3d 391, 2006-Ohio-2706, 848 N.E.2d 496. Because the offenses contained in the indictment occurred on October 31, 2005, the trial court was not permitted to order restitution to Indiana Insurance. Accordingly, we sustain Baltzer's fourth assignment or error.
 {¶ 42} However, the trial court was permitted to award $1,000 in restitution to Wolf Creek Local School District for the amount of economic loss that was not reimbursed by the insurance carrier, and the trial court was not required to apportion that amount among all of the defendants.
 {¶ 43} The current version of R.C. 2929.18(A) authorizes a trial court to order a felony offender to pay restitution to a victim based upon the amount of economic loss suffered by the victim as a direct and proximate result of the commission of the offense. If the offender disputes the amount of restitution, the court must hold a hearing.
 {¶ 44} Baltzer claims the trial court should have conducted an evidentiary hearing, giving all of the defendants an opportunity to testify, and then awarding restitution accordingly. However, Baltzer did not object to the trial court's award of restitution and did not request a hearing. Because Baltzer did not raise this issue with the trial court, he has forfeited all but plain error. *Page 19 
 {¶ 45} Baltzer fails to cite to any authority which would require the trial court to proportionally split the restitution order in relation to each defendant's contribution to the loss. Nothing in R.C. 2929.18
requires a trial court to determine the relative percentage of responsibility to assign an accomplice in relation to the economic loss suffered. See State v. Ankrom, 11th Dist. No. 2006-L-124,2007-Ohio-3374. As indicated above, R.C. 2929.18 only requires a restitution order to be limited to the actual damage or loss caused by the offense of which the defendant is convicted. Baltzer was convicted of vandalism under a theory of complicity. The school's losses were a direct and proximate result of the offense of which Baltzer was convicted. Accordingly, the trial court's restitution order was statutorily valid.
 VII. Conclusion {¶ 46} Accordingly, we overrule Baltzer's second, third, and fifth assignments of error, sustain the first and fourth assignments of error, and reverse and remand for a new trial.
 JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED. *Page 20 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED and that the Appellant and Appellee split costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 McFarland, P.J. Abele, J.: Concur in Judgment and Opinion.
 *Page 1