OPINION *Page 2 
{¶ 1} Appellant Floyd Rhinebolt appeals the judgment of the Court of Common Pleas of Delaware County, Ohio, convicting and sentencing him for one count of receiving stolen property, a felony of the third degree, in violation of R.C. 2913.51(A). The appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Floyd Rhinebolt, Jr., (hereinafter Floyd Jr.) received $425,122.44 from a medical malpractice settlement in January 2003. Floyd Jr. had sued a Marion, Ohio urologist because of an incorrect and unnecessary operation performed on August 14, 1997. The operation involved a reimplantation of the urethra into the bladder. The operation caused severe urinary reflux into the kidneys that led to kidney damage. This will require, at some point in Floyd Jr.'s life, a kidney transplant. Floyd Jr. was 16 years old at the time of the settlement. The Probate Court of Delaware County named Linda Rhinebolt, Floyd's mother, the legal guardian of the minor child's account. Floyd Jr. turned eighteen years old in September 2005. Mrs. Rhinebolt, a co-defendant in this case, was ordered to deposit the settlement amount of $425,122.44 in a trust account at Fifth Third Bank "for the benefit of the Minor." Access to the account was restricted to only those expenditures approved by an order of the Probate Court. The funds were earmarked to pay for future medical expenses of Floyd, Jr., including a kidney transplant. Linda Rhinebolt was familiar with this Order, having filed a motion to withdraw funds from the account to pay for medical bills. *Page 3 
 {¶ 3} Appellant is the father of Floyd Jr. and the husband of Linda Rhinebolt. Over the next year, Linda Rhinebolt, with her husband's knowledge, proceeded to withdraw all but $4.52 of the $425,122.44.
 {¶ 4} Mr. and Mrs. Rhinebolt purchased a home so they could move out of their mobile home. After purchasing the residence, the Rhinebolts then secured a mortgage of $116,000. $111,569.20 of that mortgage was used by the Rhinebolts to pay down debts, including debts from a bankruptcy filed by both Mr. and Mrs. Rhinebolt. Appellant's signature appeared on the loan application for the mortgage. $46,000 of the mortgage funds were deposited in appellant's bank account.
 {¶ 5} The Rhinebolts also purchased an in-ground swimming pool. Further money from Floyd, Jr.'s account was used to purchase three "quads" or four-wheel drive vehicles. The bank records, entered as evidence, show dozens of bank counterchecks and wire transfers from the "trust" account into the account of Linda Rhinebolt. On one day alone, deposits of more than $10,000 were made into the appellant's bank account.
 {¶ 6} Mrs. Rhinebolt initiated a wire transfer to purchase a boat. Although she could not remember what kind of boat they had purchased, she testified, "They could ski behind it." The couple purchased a Jacuzzi for the master bedroom and constructed a backyard patio. The Rhinebolts further used the funds to pay for a Florida vacation and to pay off the loan on appellant's truck.
 {¶ 7} Mrs. Rhinebolt entered a plea of guilty to theft and forgery in connection with the settlement money. *Page 4 
 {¶ 8} Later, after the theft was discovered, Floyd Jr. sued his parents and Fifth Third Bank to recover the funds. Fifth Third settled with Floyd Jr. for $325,000.
 {¶ 9} In 2003, Mrs. Rhinebolt's income was $3,640. Appellant's income as a truck driver was $17,000 and an additional $4,207.81 from his previous employer, Kroger Co. He earned $16,249 in 2004. Appellant blamed his son for the financial depletion of funds in the trust account because Floyd Jr. wanted to purchase the house.
 {¶ 10} Appellant was indicted on two counts of theft and one count of receiving stolen property. The jury returned a verdict of not guilty on the two charges of theft. Appellant was found guilty of receiving stolen property. The trial court sentenced appellant to community control. The Court further ordered an award of restitution to be paid to Fifth Third Bank in the amount of $335, 000.00. The trial court also ordered appellant to pay restitution to his son in the amount of $92,212.79.
 {¶ 11} Appellant has timely appealed raising three assignments of error:
 {¶ 12} "I. THE APPELLANT WAS DENIED A FAIR TRIAL AS A RESULT OF PROSECUTOR MISCONDUCT AND THE TRIAL COURTS ACQUIESCENCE.
 {¶ 13} "II. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT DISMISSED A PROSPECTIVE JUROR WITHOUT QUESTIONING HIM.
 {¶ 14} "III. THE TRIAL COURT ERRED AND IS WITHOUT AUTHORITY TO AWARDED RESTITUTION TO FIFTH THIRD BANK AS THEY ARE NOT A VICTIM AND INDEED ARE A JOINT TORTFEASOR WITH APPELLANT." *Page 5 
 I. {¶ 15} In his first assignment of error, appellant contends that prosecutorial misconduct resulted in reversible error. Specifically, appellant argues that the prosecutor's statements in both opening and closing arguments that "this is a case about a stolen kidney" and "by the time his mother and father. . .got done looting that trust account by 2005, there wasn't any money to get a kidney" were dishonest.
 {¶ 16} Appellant's argues that the Floyd, Jr. and the bank entered into a separate settlement concerning the bank's liability for releasing funds to his parents without the necessary order from the Probate Court. The parents did not dissipate this separate settlement money. According to appellant the state, therefore, mislead the jury by arguing that the minor did not have money for a kidney transplant. (1T. at 16-17; Appellant's Brief at 8-9). Because of this "deception," appellant asserts he was denied a fair trial. We disagree.
 {¶ 17} During opening statement, counsel is accorded latitude and allowed fair comment on the facts to be presented at trial. SeeMaggio v. Cleveland (1949), 151 Ohio St. 136, 38 O.O. 578,84 N.E.2d 912, paragraph two of the syllabus. See, also, e.g., State v.LaMar, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, at ¶ 126.State v. Leonard (2004), 104 Ohio St.3d 54, 2004-Ohio 6235 at ¶ 157;818 N.E.2d 229, 265-66. In addition, a prosecutor is entitled to a certain degree of latitude in closing arguments. State v. Liberatore (1982),69 Ohio St. 2d 583, 589, 433 N.E.2d 561. Thus, it falls within the sound discretion of the trial court to determine the propriety of these arguments. State v. Maurer (1984), 15 Ohio St. 3d 239, 269,473 N.E.2d 768. A conviction will be reversed only where it is clear beyond a reasonable doubt that, absent *Page 6 
the prosecutor's comments, the jury would not have found the defendant guilty. State v. Benge, 75 Ohio St.3d 136, 141, 1996-Ohio-227. Furthermore, "[i]solated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." Donnelly v.DeChristoforo (1974), 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431.
 {¶ 18} The Ohio Supreme Court has overruled a prosecutorial misconduct argument because the evidence of the defendant's guilt was overwhelming. See State v. Hand, 107 Ohio St.3d 378, 398, 2006-Ohio-18,840 N.E.2d 151, citing State v. Rahman (1986), 23 Ohio St.3d 146, 154-155,492 N.E.2d 401. Accordingly, based upon appellant's failure to object to the statements and bring the issue to the trial court's attention for consideration, we must address this assignment under the plain error doctrine.
 {¶ 19} In criminal cases, plain error is governed by Crim. R. 52(B), which states:
 {¶ 20} "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." An alleged error "does not constitute a plain error . . . unless, but for the error, the outcome of the trial clearly would have been otherwise." State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph two of the syllabus.
 {¶ 21} The defendant bears the burden of demonstrating that a plain error affected his substantial rights. United States v. Olano (1993), 507 U.S. at 725,734, 113 S.Ct. 1770; State v. Perry (2004),101 Ohio St.3d 118, 120 802 N.E.2d 643, 646. Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to `prevent a manifest miscarriage of justice.'"State v. *Page 7 Barnes (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240, quoting State v.Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. Perry, supra, at 118, 802 N.E.2d at 646.
 {¶ 22} The Supreme Court has repeatedly admonished that this exception to the general rule is to be invoked reluctantly. "Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id. at paragraph three of the syllabus. See, also, State v.Thompson (1987), 33 Ohio St.3d 1, 10, 528 N.E.2d 542; State v.Williford (1990), 49 Ohio St.3d 247, 253, 551 N.E.2d 1279 (Resnick, J., dissenting).
 {¶ 23} Comments made to incite fear, prejudice and/or passion in the jury require reversal. Viereck v. United States (1943), 318 U. S. 236,247; State v. Williams (1986), 23 Ohio St. 3d 16, 20. We find the statements cited by appellant in support of his argument do not rise to the level of inciting fear, prejudice and/or passion. The state simply did not present any misleading information.
 {¶ 24} "The prosecutors' argument did not manipulate or misstate the evidence, nor did it implicate other specific rights of the accused such as the right to counsel or the right to remain silent. . . ." Darden v.Wainwright (1986), 477 U.S. 168. 181-182, 106 S.Ct. 2624, 2472. In fact, the comments of the prosecutor were cumulative. Evidence that the funds at issue were obtained because of a medical malpractice settlement and were awarded because the minor would need a kidney transplant at some time during the course of his life was admitted without objection. (1T. at 30; 50; 69; State's Exhibit 5-C). Moreover, the trial court instructed the jury that it must decide the case on the evidence and that opening statements and closing arguments are not evidence. We *Page 8 
presume that the jury followed the court's instructions. State v.Loza (1994), 71 Ohio St.3d 61, 79, 641 N.E.2d 1082
 {¶ 25} We find no error plain or otherwise. No misconduct occurred because of the prosecutor's comments. Under these circumstances, there is nothing in the record to show that the jury would have found the appellant not guilty had the comment not been made on the part of the prosecution.
 {¶ 26} In the circumstances of the case, no prejudice amounting to a denial of constitutional due process was shown.
 {¶ 27} Appellant's first assignment of error is overruled.
 II. {¶ 28} In his second assignment of error, appellant argues that the trial court did not give him a chance to voir dire a prospective juror before the trial court excused him.
 {¶ 29} In the case at bar, appellant has not provided this court with a transcript of the voir dire proceedings. Absent a complete transcript, we are unable to review the facts underlying the trial court's excusal of the prospective juror.
 {¶ 30} In Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197,199, the Supreme Court of Ohio held the following: "[t]he duty to provide a transcript for appellate review falls upon the appellant. This is necessarily so because an appellant bears the burden of showing error by reference to matters in the record. See State v. Skaggs (1978),53 Ohio St. 2d 162. This principle is recognized in App. R. 9(B), which provides, in part, that `* * *the appellant shall in writing order from the reporter a complete transcript or a transcript of such parts of the proceedings not already on file as he deems necessary for inclusion in the record.* * *.' When portions of the transcript *Page 9 
necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm."(Footnote omitted.)
 {¶ 31} Without a transcript of the voir dire proceedings, appellant cannot demonstrate any error or irregularity in connection with the trial court's decision. Knapp v. Edwards Laboratories (1980),61 Ohio St. 2d 197, 199, 400 N.E.2d 384. A presumption of regularity applies to the trial court's excusing of the juror, and appellant has shown us nothing to overcome the presumption.
 {¶ 32} Appellant's second assignment of error is overruled.
 III. {¶ 33} In his third assignment of error, appellant maintains that the trial court erred in awarding restitution to Fifth Third Bank the financial institution that held the trust account. Appellant further argues that the amount of restitution ordered by the trial court was determined without evidence of the actual amount of the loss. We disagree, in part.
 {¶ 34} The indictment in the case at bar alleged a continuing course of conduct from January 2003 through September 2005. However, State's Exhibit 14 R shows that on May 20, 2004 the balance of the trust account was $57.62.
 {¶ 35} Under former R.C. 2929.18(A), a trial court imposing a sentence upon a felony offender could require the offender to pay restitution to reimburse "third parties for amounts paid to or on behalf of the victim." 148 Ohio Laws, Part IV, 8674, 8767. On June 1, 2004, the legislature amended R.C. 2929.18 to delete all references to *Page 10 
restitution for third parties. See 2003 Sub. H.B. No. 52. As a result, for offenses committed after June 1, 2004, trial courts are no longer permitted to award restitution in criminal cases to third parties, including insurance carriers. State v. Kreischer (2006),109 Ohio St. 3d 391, 2006-Ohio-2706, 848 N.E.2d 496; State v. Baltzer, Fourth Dist. No. 06 CA 76, 2007-Ohio-6719 at ¶ 41.
 {¶ 36} The law in effect at the time of the offense, January 2003 to and including May 20, 2004, authorized the trial court to award restitution to third parties.
 {¶ 37} R.C. 2929.18(A) in effect at the time provided:
 {¶ 38} "[T]he court imposing a sentence upon an offender for a felony may sentence the offender to any financial sanction or combination of financial sanctions authorized under this section * * * Financial sanctions that may be imposed pursuant to this section include, but are not limited to, the following:
 {¶ 39} "(1) Restitution by the offender to the victim of the offender's crime * * * in an amount based on the victim's economic loss. * * * [T]he restitution * * * may include a requirement thatreimbursement be made to third parties for amounts paid to or on behalfof the victim * * * for economic loss resulting from the offense."
(Emphasis added.)
 {¶ 40} Further, R.C. 2929.01 (M) defined economic loss as "any economic detriment suffered by a victim as a direct and proximate result of the commission of an offense and includes any loss of income due to lost time at work because of any injury caused to the victim, and any property loss, medical cost, or funeral expense incurred as a result of the commission of the offense." *Page 11 
"A sentence of restitution must be limited to the actual economic loss caused by the illegal conduct for which the defendant was convicted."State v. Banks, Montgomery County App. No. 20711, 2005-Ohio-4488, at paragraph five. The amount of the restitution must be supported by competent, credible evidence from which the court can discern the amount of the restitution to a reasonable degree of certainty. State v.Gears (1999), 135 Ohio App.3d 297, 733 N.E.2d 683. A trial court abuses its discretion in ordering restitution in an amount that was not determined to bear a reasonable relationship to the actual loss suffered. State v. Williams (1986), 34 Ohio App.3d 33, 516 N.E.2d 1270.
 {¶ 41} In the case at bar, the state admitted evidence at trial that the original settlement amount for the medical malpractice claim was $425,122.44. The trial court ordered restitution in the amount of $335,000.00 to Fifth Third Bank. However, the parties agree that the bank settled the lawsuit brought against it by Floyd, Jr. for $325,000.00. There is no explanation in the record concerning the $10,000.00 windfall to the bank.
 {¶ 42} The order of restitution to Fifth Third Bank in the amount of $335,000.00 is vacated and the matter is remanded for an evidentiary hearing on restitution to Fifth Third Bank. That sum is the amount of the actual economic loss the bank incurred as a direct and proximate result of the commission of the offense for which appellant was convicted.
 {¶ 43} Appellant's third assignment of error is sustained in part. *Page 12 
 {¶ 44} For the forgoing reasons, the judgment of the Delaware County Court of Common Pleas is affirmed in part and reversed in part and this case is remanded for proceedings in accordance with our opinion and the law.
 By Gwin, J., Hoffman, P.J., and Wise, J., concur *Page 13 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Delaware County Court of Common Pleas is affirmed in part and reversed in part and this case is remanded for proceedings in accordance with our opinion and the law. Costs to be divided equally between the parties. *Page 1