[Cite as *State v. Robinson*, 2010-Ohio-6579.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No: 10CA6 |
| | : | |
| v. | : | |
| | : | DECISION AND |
| WILLIAM R. ROBINSON, | : | JUDGMENT ENTRY |
| | : | |
| Defendant-Appellant. | : | File-stamped date:  12-21-10 |

_____

APPEARANCES:

Warren N. Morford, Jr., Ironton, Ohio, for Appellant.

J.B. Collier, Jr., Lawrence County Prosecuting Attorney, and Robert C. Anderson, Lawrence County Assistant Prosecuting Attorney, Ironton, Ohio, for Appellee.

_____

Kline, J.:

{¶1}    William R. Robinson (hereinafter "Robinson") appeals the judgment of the Lawrence County Court of Common Pleas.  After a jury trial, Robinson was found guilty of felonious assault.  Robinson's appellate counsel has advised this court that, after reviewing the record, he cannot find a meritorious claim for appeal.  As a result, Robinson's appellate counsel has moved to withdraw under *Anders v. California* (1967), 386 U.S. 738.  After independently reviewing the record, we agree that Robinson's appeal is wholly frivolous.  Accordingly, we (1) grant counsel's request to withdraw and (2) affirm the judgment of the trial court.

I.

**{¶2}** Robinson spent the evening of October 25, 2009, at the Fuzzy Duck, a full service bar and restaurant in Ironton, Ohio. While at the Fuzzy Duck, Robinson saw Molly Matthews (hereinafter "Matthews") and Sally Patrick (hereinafter "Patrick") dancing together. Robinson approached Matthews and Patrick, but the two women rebuffed his advance. Sometime later, Robinson returned to his seat.

**{¶3}** After Matthews and Patrick finished dancing, Matthews wanted to smoke a cigarette outside. Patrick agreed to join her, so they went outside to stand on the Fuzzy Duck's attached deck. Initially, Matthews and Patrick were alone on the deck, but Robinson joined them a couple minutes later. After Patrick asked Robinson to leave, Robinson apparently became agitated and said, "I am going to [f--k] you up." Transcript at 146, 147. Robinson then asked Matthews if she would "like to go [f--k]" in Robinson's van. Transcript at 146, 147. (At trial, Robinson denied making these comments.) Patrick once again asked Robinson to leave them alone, but he kept moving closer to Matthews. Alarmed, Patrick went back inside the Fuzzy Duck to get help.

**{¶4}** In the meantime, Michael Staten (hereinafter "Staten") and another man went outside to check on Matthews. Staten saw Robinson near Matthews and asked him to leave her alone. At about the same time, Patrick returned to the deck with Britt Delawder (hereinafter "Delawder"), the owner of the Fuzzy Duck. Delawder grabbed the beer out of Robinson's hand and told him to leave the premises. Tensions escalated, and soon Robinson was engaged in a heated verbal confrontation with Staten and Delawder.

**{¶5}** Eventually, Staten and Delawder backed Robinson down a "wheelchair ramp" that led from the deck into the parking lot. Once Robinson was in the parking lot,

Delawder walked back up the ramp to talk to Patrick. Staten, however, remained at the bottom of the ramp and kept telling Robinson to leave. Throughout this time, Robinson jumped around the parking lot in an agitated and aggressive manner. While jumping around, Robinson also screamed various threats, including "I'm going to cut you up." Transcript at 153, 240. Then, Robinson lunged at Staten and sliced at him with a knife. Staten was not hurt, but his shirt was cut open. Robinson continued to shout and jump around, but he soon walked through the parking lot, crossed a road, and exited through an opening in a floodwall. Nobody chased Robinson as he left the scene.

{¶6} About ten-or-twenty minutes later, Robinson returned to the Fuzzy Duck parking lot. Delawder saw him, ran after Robinson, and chased him into the street. The chase lasted until a police officer saw Delawder and Robinson in the middle of an intersection. The officer stopped her cruiser, called for additional officers, and positioned herself in between Delawder and Robinson. A short time later, the police secured the knife from Robinson's front pocket and placed him under arrest.

{¶7} A Lawrence County Grand Jury indicted Robinson with felonious assault. Robinson entered a not guilty plea, and the case proceeded to a jury trial.

{¶8} At trial, Robinson claimed that he acted in self defense when he sliced his knife at Staten, and the trial court instructed the jury on the use of deadly force in self defense. Nevertheless, the jury found Robinson guilty of felonious assault.

II.

{¶9} Although Robinson has appealed his conviction, Robinson's appellate counsel has filed both a motion to withdraw and an *Anders* brief. "In *Anders*, the United States Supreme Court held that if counsel determines after a conscientious examination

of the record that the case is wholly frivolous, counsel should so advise the court and request permission to withdraw. Id. at 744. Counsel must accompany the request with a brief identifying anything in the record that could arguably support the appeal. Id. Counsel also must furnish the client with a copy of the brief and request to withdraw and allow the client sufficient time to raise any matters that the client chooses. Id. Once these requirements have been satisfied, the appellate court must then fully examine the proceedings below to determine if meritorious issues exist. Id. If the appellate court determines that the appeal is frivolous, it may grant counsel's request to withdraw and dismiss the appeal without violating constitutional requirements or may proceed to a decision on the merits if state law so requires. Id. Alternatively, if the appellate court concludes that any of the legal points are arguable on their merits, it must afford the appellant the assistance of counsel to argue the appeal. Id." *State v. Wise*, Lawrence App. No. 08CA40, 2009-Ohio-5264, at ¶11. See, also, *State v. Taylor*, Montgomery App. No. 23833, 2010-Ohio-4276, at ¶2 (stating that an appellant must be afforded "time to file a pro se brief").

{¶10} Upon receiving an *Anders* brief, we must "conduct 'a full examination of all the proceeding[s] to decide whether the case is wholly frivolous.'" *Penson v. Ohio* (1988), 488 U.S. 75, 80, quoting *Anders* at 744. If we find only frivolous issues on appeal, we may then proceed to address the case on its merits without affording appellant the assistance of counsel. *Penson* at 80. However, if we conclude that there are nonfrivolous issues for appeal, we must afford appellant the assistance of counsel to address those issues. *Anders* at 744; *Penson* at 80; see, also, *State v. Alexander* (Aug. 10, 1999), Lawrence App. No. 98CA29.

{¶11} Here, Robinson's counsel has satisfied the requirements of *Anders*. And although Robinson has not filed a pro se brief, Robinson's counsel has raised the following potential assignments of error: I. "The appellant, William R. Robinson, may assert as an assignment of error, that the jury erred in failing to find he established the affirmative defense of self defense." II. "The appellant, William R. Robinson, may assert as an assignment of error that the verdict is not supported by sufficient evidence." And III. "The appellant, William R. Robinson, may assert as an assignment of error that the trial court erred, to his material prejudice, when it improperly instructed the jury on the issue of self-defense." We will examine these potential assignments of error – and the entire record below – to determine if Robinson's appeal lacks merit.

III.

{¶12} For ease of analysis, we will review Robinson's second potential assignment of error out of order. The second potential assignment of error is that insufficient evidence supports Robinson's conviction.

{¶13} When reviewing a case to determine if the record contains sufficient evidence to support a criminal conviction, we must "'examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Smith*, Pickaway App. No. 06CA7, 2007-Ohio-502, at ¶33, quoting *State v. Jenks* (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus. See, also, *Jackson v. Virginia* (1979), 443 U.S. 307, 319.

{¶14} The sufficiency-of-the-evidence test "raises a question of law and does not allow us to weigh the evidence." *Smith*, 2007-Ohio-502, at ¶34, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175. Instead, the sufficiency-of-the-evidence test "'gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Smith*, 2007-Ohio-502, at ¶34, quoting *Jackson* at 319. This court will "reserve the issues of the weight given to the evidence and the credibility of witnesses for the trier of fact." *Smith*, 2007-Ohio-502, at ¶34, citing *State v. Thomas* (1982), 70 Ohio St.2d 79, 79-80; *State v. DeHass* (1967), 10 Ohio St.2d 230, at paragraph one of the syllabus.

{¶15} Robinson was convicted of felonious assault. R.C. 2903.11(A)(2) provides that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance." "Under Ohio law, a knife is not presumed to be a deadly weapon. *State v. Perkins* (May 13, 1996), Fayette App. No. CA95-08-020[,] citing *City of Columbus v. Dawson* (1986), 28 Ohio App.3d 45, 46 * * *. Instead, the prosecution must prove either (1) that the knife was designed or specifically adapted for use as a weapon, or (2) the defendant possessed, carried, or used the knife as a weapon. *Perkins*[.]" *State v. Pringle*, Butler App. No. CA2007-08-193 & CA2007-09-238, 2008-Ohio-5421, at ¶43; see, also, *State v. Hill*, Franklin App. No. 09AP-398, 2010-Ohio-1687, at ¶30; *State v. Schooler*, Montgomery App. No. 19627, 2003-Ohio-6248, at ¶20.

{¶16} Here, under the circumstances, Robinson's knife clearly qualifies as a deadly weapon. First, Patrick and Staten both testified that Robinson said, "I'm going to

cut you up." Transcript at 153, 240. By making this statement, Robinson demonstrated that he intended to use the knife as a weapon. See *Pringle* at ¶44; *Schooler* at ¶25. Moreover, on cross-examination, Robinson testified that he took the knife out of his pocket and "sliced it like that[.]" Transcript at 312. The prosecution asked Robinson to clarify what he meant by "sliced."

{¶17} "Q. But then you used the word on cross examination the word sliced. That implicated to me that you were doing something.

{¶18} "A. That's attempting to cut somebody that was going to hurt me yes.

{¶19} "Q. Okay, that's what I'm making clear.

{¶20} "A. Yeah." Transcript at 313.

{¶21} Thus, Robinson admitted to actually using the knife as a weapon. And accordingly, the knife clearly qualifies as a deadly weapon under R.C. 2903.11(A)(2).

{¶22} The evidence also supports the remaining elements of felonious assault. First, Robinson testified that he "attempt[ed] to cut" Staten. Transcript at 313. Second, Delawder and Staten testified to a similar series of events; that is, Robinson either "[s]wung at" or "lunged at" Staten. Transcript at 188, 240. Finally, Staten's shirt was cut, and the police recovered the knife from Robinson shortly after the altercation. In short, the evidence against Robinson is overwhelming, especially considering Robinson's own testimony that he (1) brandished a knife and (2) sliced it at Staten.

{¶23} After viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that Robinson knowingly attempted to cause physical harm to Staten by means of a deadly weapon. Therefore, we agree that Robinson's second potential assignment of error is without merit.

IV.

{¶24} We will next address Robinson's third potential assignment of error. Here, Robinson's counsel states that the trial court might have erred by giving the self-defense instruction pertaining to the use of deadly force. Instead, Robinson argues that, perhaps, the trial court should have given the self-defense instruction for the use of non-deadly force.

{¶25} Robinson did not object to the deadly-force instruction at the trial court level. Therefore, with regards to the jury instruction, Robinson has forfeited all but plain error on appeal. See, e.g., *State v. Cooper*, 170 Ohio App.3d 418, 2007-Ohio-1186, at ¶30 (citations omitted); see, also, Crim.R. 30(A). However, because Robinson's counsel has filed an *Anders* brief, we must examine the entire proceedings for potential error. As a result, we will review Robinson's second potential assignment of error as though he *did* object to the deadly-force instruction. This is so because the failure to object to a jury instruction may constitute ineffective assistance of counsel. See, e.g., *State v. Baltzer*, Washington App. No. 06CA76, 2007-Ohio-6719, at ¶20-31. And if we can find no error under the more lenient standard of review – that is, no error even if Robinson's trial counsel had objected – there can be no meritorious issues related to the trial court's choice of self-defense instruction. See *State v. Norman*, Ross App. Nos. 08CA3059 & 08CA3066, 2009-Ohio-5458, at ¶69 ("Defense counsel's failure to raise meritless issues does not constitute ineffective assistance of counsel.") (internal quotation omitted); *State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, at ¶44 (finding that "a claim of ineffective assistance of counsel cannot be predicated upon a matter which did not constitute error").

**{¶26}** "Generally, a trial court has broad discretion in deciding how to fashion jury instructions. A trial court must not, however, fail to 'fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder.' *State v. Comen* (1990), 50 Ohio St.3d 206[, at] paragraph two of the syllabus. Additionally, a trial court may not omit a requested instruction, if such instruction is 'a correct, pertinent statement of the law and [is] appropriate to the facts * * *.' *State v. Lessin* (1993), 67 Ohio St.3d 487, 493[,] (quoting *State v. Nelson* (1973), 36 Ohio St.2d 79[, at] paragraph one of the syllabus).

**{¶27}** "In determining whether to give a requested jury instruction, a trial court may inquire into the sufficiency of the evidence to support the requested instruction. See id. at 494. A trial court is therefore vested with discretion to determine whether sufficient evidence was presented at trial [to] require[] a particular jury instruction. [*State v. Mitts*, 81 Ohio St.3d 223, 228, 1998-Ohio-635.] If, however, the evidence does not warrant an instruction a trial court is not obligated to give the requested instruction. See *Lessin* * * * at 494. Thus, in our review we must determine whether the trial court abused its discretion by finding that the evidence was insufficient to support the requested charge. See *Mitts* [at 228]; *State v. Wolons* (1989), 44 Ohio St.3d 64[, at] paragraph two of the syllabus; see, also, *State v. Elijah* (July 14, 2000), Montgomery App. No. 18034. Generally, an abuse of discretion may be found if a trial court's attitude is unreasonable, arbitrary or unconscionable. See, e.g., *State v. Montgomery* (1991), 61 Ohio St.3d 410, 413[.]" *Smith v. Redecker*, Athens App. No. 08CA33, 2010-Ohio-505, at ¶51-52. See, also, *State v. Gary*, Hamilton App. No. C-090643, 2010-Ohio-5321, at ¶23; *State v. Jordan*, Trumbull App. No. 2009-T-0110, 2010-Ohio-5183,

at ¶27; *State v. McClendon*, Montgomery App. No. 23558, 2010-Ohio-4757, at ¶13; but, see, *State v. Howard*, Ross App. No. 07CA2948, 2007-Ohio-6331, at ¶27 ("[T]he issue of whether an instruction is required presents a question of law for de novo review.").

{¶28} "The self-defense instruction based on the use of deadly force requires a defendant to prove by a preponderance of the evidence: (1) that he was not at fault in creating the situation giving rise to the altercation; (2) that he had a bona fide belief that he was in immediate danger of bodily harm and that his only means of escape from such danger was the use of force; and (3) that he did not violate any duty to retreat or to avoid the danger." *State v. Vu*, Franklin App. No. 09AP-606, 2010-Ohio-4019, at ¶10, citing *State v. D.H.*, 169 Ohio App.3d 798, 2006-Ohio-6953, at ¶30, in turn citing *State v. Jackson* (1986), 22 Ohio St.3d 281, 284. See, also, *State v. Braylock*, Lucas App. No. L-08-1433, 2010-Ohio-4722, at ¶24, citing *State v. Barnes*, 94 Ohio St.3d 21, 24, 2002-Ohio-68, in turn citing *State v. Robbins* (1979), 58 Ohio St.2d 74, at paragraph two of the syllabus.

{¶29} "In contrast, the non-deadly force instruction requires a defendant to establish (1) that the defendant was not at fault in creating the situation giving rise to the altercation and (2) that he had reasonable grounds to believe and an honest belief, even [if] mistaken, that he was in imminent danger of bodily harm and his only means to protect himself from such danger was by the use of force not likely to cause death or great bodily harm." *State v. Griffin*, Montgomery App. No. 20681, 2005-Ohio-3698, at ¶18, citing 4 Ohio Jury Instructions (2006), Section 411.33; *State v. Hansen*, Athens App. No. 01CA15, 2002-Ohio-6135, at ¶24; see, also, *State v. Jeffers*, Lake App. No. 2007-L-011, 2008-Ohio-1894, at ¶67.

**{¶30}** "'Deadly force' means any force that carries a substantial risk that it will proximately result in the death of any person." R.C. 2901.01(A)(2). In this regard, we have found "that slashing another person with a lock-blade knife carries a substantial risk of death. * * * And, likewise, we [have also found] that a deadly-force, self-defense instruction is appropriate when physical harm was inflicted by means of a deadly weapon or dangerous ordnance." *Hansen* at ¶29, citing *State v. Wagner* (July 14, 2000), Lake App. No. 99-L-043; *State v. Chlebowski* (May 28, 1992), Cuyahoga App. No. 60808. See, also, *State v. Kewer*, Lorain App. No. 07CA009128, 2007-Ohio-7047, at ¶7; *State v. Sims*, Cuyahoga App. No. 85608, 2005-Ohio-5846, at ¶16-17; *Griffin* at ¶20. Here, we have already found that Robinson's knife qualifies as a deadly weapon. And Robinson himself admitted that he "sliced" the knife at Staten. Therefore, sufficient evidence supports the self-defense instruction pertaining to the use of deadly force, and we cannot find that the trial court abused its discretion by choosing the deadly-force instruction.

**{¶31}** Accordingly, we agree that Robinson's third potential assignment of error has no merit.

V.

**{¶32}** Robinson's first potential assignment of error is that he should have been acquitted based on the affirmative defense of self defense. Essentially, Robinson contends that the jury's finding of guilt was, perhaps, against the manifest weight of the evidence. See, e.g., *State v. King*, Lorain App. No. 10CA009755, 2010-Ohio-4400, at ¶20-21 (reviewing a self-defense claim under the manifest-weight-of-the-evidence

standard); *State v. Smiley*, Cuyahoga App. No. 93565, 2010-Ohio-4002, at ¶¶13, 25 (same).

**{¶33}** "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, at paragraph two of the syllabus. Sufficiency is a test of the adequacy of the evidence, but "'[w]eight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other[.]'" *State v. Sudderth*, Lawrence App. No. 07CA38, 2008-Ohio-5115, at ¶27, quoting *Thompkins* at 387 (other internal quotation omitted).

**{¶34}** "Even when sufficient evidence supports a verdict, we may conclude that the verdict is against the manifest weight of the evidence, because the test under the manifest weight standard is much broader than that for sufficiency of the evidence." *Smith*, 2007-Ohio-502, at ¶41. We "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted." *Smith*, 2007-Ohio-502, at ¶41, citing *State v. Garrow* (1995), 103 Ohio App.3d 368, 370-371; *Martin* at 175. However, "[o]n the trial of a case, * * * the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *DeHass*, at paragraph one of the syllabus.

**{¶35}** "By claiming self-defense, [Robinson] concedes [that] he had the purpose to commit the act, but asserts that he was justified in his actions. * * * [Robinson] had the burden at trial to prove self-defense by a preponderance of the evidence." *King* at

¶20 (internal quotation and citations omitted).  We have already found that the self-defense instruction pertaining to the use of deadly force was appropriate.  And here, the evidence clearly demonstrates that Robinson could have escaped any danger by fleeing into the parking lot.  Immediately before the slicing incident, Delawder stood near the top of the ramp while Staten stood at the bottom.  Robinson, however, was entirely off the ramp and jumping around the parking lot – anywhere from six feet to fifteen feet away from Staten.  Transcript at 240.  And as Robinson's own testimony demonstrates, he had wide open access to the parking lot.

**{¶36}** "Q. Somebody, there was a person behind you?

**{¶37}** "A. Naw.

**{¶38}** "Q. No, okay.  Was there a parking lot behind you?

**{¶39}** "A. Yeah cars right here, cars over here and a little deck, whatever that is."
Transcript at 316.

**{¶40}** Thus, nobody involved in the confrontation was behind Robinson; Robinson was not "surrounded"; and Robinson had a wide open and unabated means of escape.  But rather than escape, Robinson lunged forward and sliced his knife in Staten's direction.  For these reasons, the jury could have reasonably concluded that deadly force was not justified because Robinson had other means of escape.  Therefore, we cannot find that the jury created a manifest miscarriage of justice.

**{¶41}** Accordingly, we agree that Robinson's first potential assignment of error has no merit.

V.

**{¶42}** We find no merit in any of Robinson's potential assignments of error. Furthermore, after fully examining the proceedings below, we have found no other potential issues for appeal.  Because we agree that Robinson's appeal is wholly frivolous, we (1) grant Robinson's counsel's motion to withdraw and (2) affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

Harsha, J., concurring:

**{¶43}** I concur in judgment and opinion except for the discussion at ¶27 applying an abuse of discretion standard to determine whether the evidence warrants a particular jury instruction. Although the discussion correctly cites *State v. Mitts*, 81 Ohio St.3d 223, 228, 1998-Ohio-635, I continue to apply the Supreme Court's directive in *Murphy v. Carrollton Manufacturing Company* (1991), 61 Ohio St.3d 585 at 591 (citing the syllabus of *Feterle v. Huettner* (1971), 28 Ohio St.2d 54, which concludes:

> In reviewing a record to ascertain the presence of sufficient evidence to support the giving of a[n]*** instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction.

**{¶44}** Thus, I would review the issue on a de novo basis keeping in mind that ordinarily a court should give a requested instruction if it is a correct statement of the law applicable to the case and reasonable minds could reach the conclusion sought by the instruction. Id.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED.  Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

McFarland, P.J.:  Concurs In Judgment and Opinion.
Harsha, J.:  Concurs in Judgment and Opinion with Opinion.

For the Court

BY:_____
     Roger L. Kline, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**