DECISION AND JUDGMENT ENTRY
{¶ 1} Based upon plea negotiations where the State indicated it would recommend that Montgomery serve concurrent sentences, Johnny Montgomery pled guilty to two counts of aggravated trafficking in drugs. However, the State did not fulfill its commitment at the sentencing hearing. Nonetheless, the trial court sentenced Montgomery to three years of community control sanctions and ordered him to pay restitution to the Adams County Sheriffs Department's Furtherance of Justice Fund. However, Montgomery subsequently violated the conditions of the community control. As a sanction the State recommended, and the trial court ordered, Montgomery to serve three years in prison, representing maximum and consecutive sentences.
 {¶ 2} First, Montgomery argues, and the State apparently concedes, the trial court committed plain error when it ordered Montgomery to pay restitution to the *Page 2 
Adams County Sheriffs Department's Furtherance of Justice Fund. Because Ohio law no longer allows trial courts to order restitution to be paid to third-parties such as the Furtherance of Justice Fund, and because the Sheriffs Department was not a victim of Montgomery's crime, we reverse the trial court's restitution order.
 {¶ 3} Second, Montgomery argues the State violated his rights to due process when the prosecutor failed at the two sentencing hearings to recommend concurrent sentences as required by the plea agreement. Because he failed to raise this issue at either sentencing hearing, Montgomery failed to preserve this argument for appellate review. Furthermore, Montgomery has failed to demonstrate that his sentence represents a manifest miscarriage of justice
 {¶ 4} Finally, Montgomery argues that the trial court committed plain error and violated his rights to due process by retroactively applying the remedial holding of the Supreme Court of Ohio in State v.Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, to crimes predating that decision. However, we have consistently held that the trial court does not violate due process principles by following the remedy mandated by the Supreme Court of Ohio in Foster. We adhere to this holding.
 {¶ 5} Accordingly, we affirm in part, reverse in part, and remand.
 I. Facts {¶ 6} In January 2007, Montgomery pled guilty to two counts of aggravated trafficking in drugs, violations of R.C. 2925.03(A)(1) and fourth-degree felonies. These charges stemmed from two separate incidents in which Montgomery sold oxycodone tablets to a confidential informant. In return for his guilty plea, the State agreed that "[t]he parties would be free to argue sentencing, with the State further recommending *Page 3 
that any sentence the defendant receives in count 2 be ordered to be served concurrently with the sentence which the defendant is ordered to serve in count 1." However, the State did not make any statement concerning the appropriate sentence at the sentencing hearing, nor did Montgomery raise this aspect of the plea agreement at the hearing. Nonetheless, the trial court sentenced Montgomery to three years of community control sanctions, informing Montgomery that any violation of the terms of his community control could result in the imposition of a three year prison term, representing maximum and consecutive sentences. The court also ordered Montgomery to pay restitution to the Adams County Sheriffs Department's Furtherance of Justice Fund in the amount of $810.00, which represented the amount that law enforcement expended during the controlled drug purchase. Montgomery raised no objection to the trial court's sentencing entry, nor did he seek to withdraw his guilty plea or pursue an appeal.
 {¶ 7} In November 2007, the trial court revoked Montgomery's community control and held a sentencing hearing. The prosecution recommended maximum and consecutive sentences for his offenses. Neither the prosecution nor Montgomery reminded the court that the State had agreed to recommend concurrent sentences. Noting that it had considered the record in reaching its decision, the trial court imposed a three-year term of imprisonment, representing maximum and consecutive sentences. Montgomery raised no objection to his sentence at the sentencing hearing. Instead, he filed this appeal.
 II. Assignments of Error {¶ 8} Montgomery presents four assignments of error: *Page 4 
 1. "R.C. 2929.18(A)(1) only authorizes a trial court to order restitution for loss suffered by a victim of the offense, based on the victim's economic loss. To order the defendant in a drug case to pay restitution to the law enforcement agency for funds it used to buy drugs from the defendant violates R.C. 2929.18(A)(1) as well as the defendant's right to due process under the Ohio and United States Constitutions. (1/23/07 Sent. Tr. pp. 19-20, 21; 11/8/07 Revocation Hrg. Tr. p. 40; 11/9/07 Sent'g Entry.)"
 2. "Due process ensures the accused the right to specific performance of promises made by the State to induce the accused to plead guilty. Therefore, the State's failure to perform its promise to recommend concurrent sentences deprived Mr. Montgomery of his rights to due process under the Ohio and United States Constitutions. (1/16/07 Hrg. Tr. p. 3; 1/23/07 Sent. Tr. p. 3; 11/8/07 Revocation Hrg. Tr. p. 33.)"
 3. "Under Hicks v. Oklahoma (1980), 447 U.S. 343, 100 S. Ct. 2227, applying the remedy devised in State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, when sentencing Mr. Montgomery [the court] violated his rights under the Due Process Clauses of the Ohio and United States Constitutions by depriving him of a vested right without due process of law. (11/9/07 Entry, 2.)"
 4. "Because sentencing under State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, retroactively subjected Johnny Montgomery to a "statutory maximum sentence" that greatly exceeds the maximum sentence he was subject to when the offenses were committed, Foster violates the Due Process Clauses of the Ohio and United States Constitutions. (11/9/07 Entry, 2.)"
 III. Restitution to Third Parties {¶ 9} In his first assignment of error, Montgomery argues that the trial court committed plain error when it ordered him to pay restitution to the Adams County Sheriff's Department's Furtherance of Justice Fund. The State puts forward no argument regarding this assignment of error.
 {¶ 10} In State v. Baltzer, Washington App. No. 06CA76,2007-Ohio-6719, at ¶ 41, we held that, under the current version of R.C. 2929.18(A)(1), "trial courts are no longer permitted to award restitution in criminal cases to third parties * * *." As we noted inBaltzer, the version of R.C. 2929.18(A)(1) in effect until June 1, 2004, specifically *Page 5 
provided for restitution to the victim of the crime or "`to third parties for amounts paid to or on behalf of the victim.'" Id. (quoting former R.C. 2929.18(A)(1)). However, the General Assembly amended R.C. 2929.18(A)(1) to delete the provision allowing trial courts to award restitution to third parties. "In the General Assembly's final analysis of 125 Sub. H.B. 52, it noted that the bill `repeals all of the language that pertains to the restitution order requiring that reimbursement be made to third parties, including governmental agencies or persons other than governmental agencies, for amounts paid to or on behalf of the victim or any survivor of the victim for economic loss * * *.'"State v. Didion, 3rd Dist. No. 13-06-25, 2007-Ohio-4494, at ¶ 27
(quoting 125 Sub. H.B. 52); see, also, State v. Kreischer,109 Ohio St.3d 391, 2006-Ohio-2706, 848 N.E.2d 496, at ¶ 1 (suggesting that trial courts may no longer award restitution to third parties for payments made to or on the behalf of the victim because "the legislature amended R.C. 2929.18 to delete all references to restitution for third parties").
 {¶ 11} Moreover, we have previously held that a law enforcement agency is not a "victim" of a crime when it "voluntarily spent its own funds to pursue a drug buy through an informant." State v. Samuels, Washington App. No. 03CA8, 2003-Ohio-6106, at ¶ 5 (construing analogous predecessor statute). Thus, the trial court ordered restitution to a third-party, not the victim of the crime, an order not permitted by the statute.
 {¶ 12} In State v. Smith, Washington App. No. 07CA25, 2008-Ohio-142, at ¶ 5, we concluded that the trial court commits plain error in ordering the defendant to pay restitution to the victim's insurance carrier and the Ohio Victims of Crime Fund. Other Ohio appellate courts have found plain error in similar contexts. State v. Bartholomew, Crawford App. No. 3-06-16, 2007-Ohio-3130, at ¶ 26; State v.Johnson, *Page 6 164 Ohio App.3d 792, 2005-Ohio-6826, 844 N.E.2d 372, at ¶ 24. InJohnson, the Second District found plain error where the trial court ordered the defendant to pay a financial sanction in order to reimburse the Ohio Highway Patrol for the costs of its investigation. Accordingly, we hold that the trial court committed plain error when it ordered Montgomery to pay restitution representing the money that the Sheriffs Department expended to purchase the drugs from him to the Furtherance of Justice Fund. We therefore reverse and vacate the restitution order.
 IV. Performance of the Plea Agreement {¶ 13} In his second assignment of error, Montgomery argues that the State violated his due process rights and its obligations under the plea agreement when it failed to recommend concurrent sentences at either of the two sentencing hearings. We disagree.
 {¶ 14} When a prosecutor induces a defendant to plead guilty based upon certain promises, the prosecutor has a duty to keep those promises.Santobello v. New York (1971), 404 U.S. 257, 92 S. Ct. 495,30 L.Ed.2d 427. When the prosecutor fails to keep those promises, the trial court ordinarily should either require specific performance by the State or allow the defendant to withdraw the plea. State v. Simpson (2004),158 Ohio App.3d 441, 443, 816 N.E.2d 609; State v. Sideris, Athens App. No. 04CA37, 2005-Ohio-1055, at ¶ 38
 {¶ 15} In the written plea agreement, the parties agreed that "[t]he parties would be free to argue sentencing, with the State further recommending that any sentence the defendant receives in count 2 be ordered to be served concurrently with the sentence which the defendant is ordered to serve in count 1." The State did not affirmatively *Page 7 
recommend that the trial court impose concurrent sentences at the first sentencing hearing, and the State recommended maximum and consecutive sentences at the sentencing hearing following the revocation of Montgomery's community control. However, Montgomery has forfeited any error related to the State's breach of its obligations under the plea agreements by not raising the issue at either sentencing hearing.Sideris at ¶ 38; see, also, United States v. Barnes (C.A.6, 2002), 278 F.3d 644, 646 ("[B]ecause Defendant failed to object after the government did not offer a recommendation at sentencing, Defendant waived his right to appeal any breach of the plea agreement, and a plain error analysis thus guides this Court's review."); State v. Dudas, Lake App. Nos. 2006-L-267 2006-L-268, 2007-Ohio-6739, at ¶ 93 (holding that the failure to object to the State's breach of a plea agreement forfeits all but plain error).
 {¶ 16} We are therefore limited to reviewing the record for plain error. For there to be plain error, there must be a plain or obvious error that "affect[s] `substantial rights,' which the court has interpreted to mean `but for the error, the outcome of the trial clearly would have been otherwise.'" State v. Litreal, 170 Ohio App.3d 670,2006-Ohio-5416, 868 N.E.2d 1018, at ¶ 11, quoting State v. Barnes
(2002), 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240. The Supreme Court of Ohio has explained that appellate courts may notice plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Landrum (1990),53 Ohio St.3d 107, 111, 559 N.E.2d 710; State v. Long (1978),53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. A reviewing court should notice plain error only if the error "`"seriously affect[s] the fairness, integrity or public reputation of judicial *Page 8 
proceedings."'" Barnes, 94 Ohio St.3d at 27, quoting United States v.Olano (1993), 507 U.S. 725, 736, 113 S. Ct. 1770, 123 L.Ed.2d 508, quoting in turn United States v. Atkinson (1936), 297 U.S. 157, 160,56 S. Ct. 391, 80 L.Ed. 555.
 {¶ 17} Here, the trial court stated that it had considered the record, and the plea agreement appears in the record signed by the parties and the trial judge. Thus, we conclude that the trial court was aware of the plea agreement. Importantly, the trial court imposed a lesser sentence than the plea agreement required the State to recommend. Under the plea agreement, the State could recommend that Montgomery serve a term of 18 months in prison. Nonetheless, the trial court concluded that community control, rather than imprisonment, was appropriate. Accordingly, we cannot say that Montgomery has demonstrated any prejudice from the State's failure to affirmatively recommend concurrent sentences at the first sentencing hearing.
 {¶ 18} Moreover, we do not believe that the State's recommendation that Montgomery serve maximum and consecutive sentences following the revocation of his community control amounts to any error, let alone plain error. Montgomery cites no authority for the proposition that the State remains obligated to recommend concurrent sentences after a defendant has violated the terms of his community control. Thus, we find no error at all in that regard.
 {¶ 19} In any case, the trial court stated that it had considered the record and, therefore, the plea agreement. The State agreed to concurrent sentences in the plea negotiations, and we conclude that the trial court was aware of the terms of the plea agreement notwithstanding the State's arguments at the hearing. The court warned Montgomery at the first hearing that his failure to abide by the terms of his community *Page 9 
control could result in imposition of maximum and consecutive sentences for his crimes. Furthermore, Montgomery failed to raise the State's alleged failure to abide by the terms of the plea agreement before receiving his sentence, and does so now only after receiving a harsher sentence than the State would have recommended under the plea agreement. Accordingly, we do not believe that Montgomery's sentencing represents a manifest miscarriage of justice, and we overrule his second assignment of error.
 V. Due Process and Foster {¶ 20} In his third and fourth assignments of error, Montgomery argues that the trial court violated his rights to due process and committed plain error by retroactively applying the remedial holding of the Supreme Court of Ohio in State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, 845 N.E.2d 470, to crimes predating that decision. In particular, he argues that the court's holding in Foster deprived him of his liberty interest in the statutory presumption in favor of less-than-maximum and concurrent sentences. In addition, he argues that the trial court violated ex-post-facto principles by retroactively "eliminating] the presumptions that he receive less-than-maximum, concurrent prison terms."
 {¶ 21} In Foster, the Supreme Court of Ohio found that several of Ohio's sentencing statutes, including R.C. 2929.14(B), were unconstitutional to the extent that they required judicial fact-finding before imposition of maximum, consecutive, or greater-than-minimum sentences. Id. at paragraphs one, three, and five of the syllabus. Applying the remedy used by the Supreme Court of the United States inUnited States v. Booker (2005), 543 U.S. 220, 125 S.Ct. 738,160 L.Ed.2d 621, the court severed the offending unconstitutional provisions in their entirety from the statutes. Foster at *Page 10 
paragraphs two, four, and six of the syllabus, and ¶ 99. The court stated that trial courts now "have full discretion to impose a prison sentence within the statutory range [of R.C. 2929.14(A)] and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id., at paragraph seven of the syllabus.
 {¶ 22} The Supreme Court released its decision in Foster on February 27, 2006, and the trial court entered Montgomery's sentences on November 9, 2007. Although he could have raised the argument that his sentences violated ex-post-facto and due-process principles with the trial court so that it could address the issue, he failed to do so. By not raising these arguments in the trial court, Montgomery has forfeited any alleged error regarding his sentence. State v. Payne, 114 Ohio St.3d 502,2007-Ohio-4642, 873 N.E.2d 306, at ¶ 21-23.
 {¶ 23} Nonetheless, Montgomery relies on Hicks v. Oklahoma (1980),447 U.S. 343, 100 S. Ct. 2227, 65 L.Ed.2d 175, for the proposition that, at the time he committed his crimes, Senate Bill 2 created a liberty interest in the statutory presumption that the sentences imposed would consist of a minimum term of imprisonment served concurrent to each other. Montgomery's reliance is misplaced.
 {¶ 24} In Hicks, the trial court instructed the jury that if it found the defendant guilty, it must sentence him to 40-years imprisonment under the habitual offender statute. The jury found the defendant guilty and imposed the mandatory 40-year term. Between the defendant's sentencing and his appeal, the Oklahoma Court of Criminal Appeals struck down this provision of the habitual offender statute. On appeal, Hicks sought to have his sentence set aside in light of the unconstitutionality of the provision *Page 11 
mandating a sentence of 40-years. The Court of Criminal Appeals affirmed his sentence, concluding that the defendant suffered no prejudice because the sentence handed down was within the range that could have been imposed for his offense. The Supreme Court of the United States reversed. Noting that the defendant had "a substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion," the court concluded that the judgment of the Court of Criminal Appeals "denied the [defendant] the jury sentence to which he was entitled under state law, simply on the frail conjecture that a jury might have imposed a sentence equally as harsh as that mandated by the invalid habitual offender provision." Id. at 346.
 {¶ 25} In Hicks, then, the defendant had an absolute statutory right to have the jury set his term of imprisonment, a right that was impaired by the failure of the jury to know that it could hand down a sentence less than 40-years imprisonment. In contrast, Montgomery had no entitlement to minimum, less-than-maximum, or concurrent sentences, either at the time he committed his offense or at the time the court entered his sentence. As we have previously explained,
 "[t]he law before Foster never mandated imposition of minimum sentences on offenders who had not previously served a prison term, as appellant asks us to do here. By demanding application of a presumption in favor of a minimum sentence, but not allowing any means by which the presumption can be overcome, `appellant essentially seeks the benefit of a state of law that never existed.'"
State v. Hardesty, Pickaway App. No. 07CA2, 2007-Ohio-3889, at ¶ 12, quoting State v. Rosado, Cuyahoga App. No. 88504, 2007-Ohio-2782, ¶ 7, quoting in turn State v. Paynter, 5th Dist. No. CT2006-0034,2006-Ohio-5542, at ¶ 39. Because the presumption against maximum and consecutive sentences could be rebutted, the *Page 12 
maximum and minimum terms of imprisonment remained the same before and after Foster. State v. VanHoose, Pike App. No. 07CA765, 2008-Ohio-112, at ¶ 26. Thus, Montgomery has not been deprived of a liberty interest by the trial court's application of the Foster remedy in sentencing him. See State v. Torok, Ashtabula App. Nos. 2007-A-0001 2007-A-0002,2008-Ohio-732, at ¶¶ 53-56 (rejecting the argument that Foster deprived defendants of a liberty interest in the presumption in favor of minimum, concurrent sentences).
 {¶ 26} Montgomery also relies on Hicks for the proposition that theFoster remedy deprived him of his liberty interest in "the appellate procedures devised by the General Assembly to [e]nsure compliance with the statutory [sentencing] scheme." However, Montgomery does not explain how his right to "meaningful appellate review" has been altered by the court's decision in Foster. In any case, we have explained that "`[a defendant's] right to appeal any sentence that was contrary to law remained the same before and after Foster'" State v. Shepherd, Scioto App. No. 06CA3106, 2008-Ohio-3350, at ¶ 11, quoting VanHoose at ¶ 26.
 {¶ 27} Montgomery also claims the Supreme Court of Ohio's decision inFoster violates due process principles by retroactively removing the presumption in favor of less-than-maximum, concurrent sentences. The essence of his argument is that, before Foster, he was entitled to the "statutory maximum penalty" that could be legally applied under the Sixth Amendment. According to the Supreme Court of the United States, "`[t]he relevant "statutory maximum" * * * is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings.'" Cunningham v.California (2007), 549 U.S. 270, 127 S. Ct. 856, *Page 13 
860, 166 L.Ed.2d 856, quoting Blakely v. Washington (2004),542 U.S. 296, 303-04, 124 S. Ct. 2531, 159 L.Ed.2d 403 (emphasis inBlakely). Thus, because the trial court could not impose maximum, consecutive sentences without making factual findings, Montgomery argues that the statutory maximum penalty for his two offenses at the time he committed them was a less-than-maximum sentence served concurrently. When the Supreme Court of Ohio in Foster excised the requirement that factual findings be made before imposing maximum, consecutive sentences, Montgomery contends, it subjected him to a higher statutory maximum at sentencing than at the time he committed the offenses.
 {¶ 28} Again, however, we have previously rejected this argument. Montgomery had notice of the sentencing range at the time he committed his offenses. "Foster neither judicially increased the range of [his] sentences nor retroactively applied a new statutory maximum. Because the range of penalties for [his] offenses remained the same post-Foster as it was pre-Foster, the application of the Foster remedy does not violate [his] due process rights or act as an ex post facto application of the law." State v. Thompson, Washington App. No. 06CA72, 2007-Ohio-6839, at ¶ 40.
 {¶ 29} Finally, Montgomery relies on the Supreme Court of the United States' recent decision in Cunningham, supra, for the proposition that "a state court cannot apply the Booker severance to state sentencing statutes in the manner that the Ohio Supreme Court appliedBooker to Ohio's sentencing statutes." Under California's Determinate Sentencing Law at issue in Cunningham, the court had to engage in judicial fact-finding before imposing the highest of three tiers of possible sentences provided by statute. The Supreme Court of California had determined that this *Page 14 
sentencing scheme sufficiently resembled the post-Booker Federal Sentencing Guidelines to pass constitutional muster.
 {¶ 30} The Supreme Court of the United States disagreed. It held that granting trial judges wide discretion to determine what facts support an enhanced sentence does not remedy the violation of the defendant's right to a trial by jury when the judge must engage in judicial fact-finding before enhancing the sentence. Rather than allowing judges to exercise their discretion in imposing a sentence within a statutorily defined range, as had been deemed proper in Booker,
 "Cunningham's sentencing judge had no discretion to select a sentence within a range of 6 to 16 years. His instruction was to select 12 years, nothing less and nothing more, unless he found facts allowing the imposition of a sentence of 6 or 16 years. Factfinding to elevate a sentence from 12 to 16 years, our decisions make plain, falls within the province of the jury employing a beyond-a-reasonable-doubt standard, not the bailiwick of a judge determining where the preponderance of the evidence lies."
Cunningham, 127 S. Ct. at 869.
 {¶ 31} Montgomery's reliance on Cunningham is misplaced. First, the court in Cunningham based its decision squarely on its Sixth Amendment jurisprudence. Cunningham therefore does not support Montgomery's assertion that the remedial holding of Foster violated ex-post-facto and due-process principles. Second, to the extent Montgomery argues that the holding in Foster failed to alleviate the constitutional infirmities of Ohio's felony sentencing laws, we have previously rejected comparisons of the California sentencing scheme with that of Ohio. State v.Bowers, Hocking App. No. 07CA16, 2008-Ohio-1399, at ¶ 6; State v.Glover, Washington App. No. 07CA17, 2007-Ohio-5868, at ¶ 8. As we explained in State v. Beck, Washington App. No. 07CA5, 2007-Ohio-4658, at ¶ 6, "[b]ecause [Ohio] judges are no longer required to make factual *Page 15 
determinations when imposing sentences, we do not believe that Ohio's felony sentencing laws run afoul of the Sixth Amendment the way California's DSL did in Cunningham." Other Ohio courts have reached the same conclusion. See Lyles v. Jeffreys (N.D. Ohio, Apr. 24, 2008), No. 3:07 CV 1315, 2008 WL 1886077, at *11 ("Ohio's sentencing statutes as revised by Foster do not resemble California's DSL in any relevant respect. Ohio's revised sentencing statutes do not require judicial findings of fact before departing from a prescribed sentencing range. * * * Lyles makes no argument that distinguishes in any relevant respect Ohio's revised sentencing statutes from the revised federal sentencing statutes upheld by the appellate courts."); State v. Lester, Auglaize App. No. 2-07-34, 2008-Ohio-1148, at ¶ 11 ("Cunningham found California's three-tiered determinate sentencing law to be unconstitutional because it required judicial fact-finding before the court could impose a higher-tier prison term. However, theCunningham remedy was the precise remedy adopted by Foster." (internal quotation omitted)); State v. Carter, Clinton App. No. CA2007-04-021,2007-Ohio-4974, at n. 1 (rejecting the argument that Ohio's felony sentencing statutes violated the holding of Cunningham).
 {¶ 32} We have consistently rejected the argument that a trial court violates due-process principles or commits plain error by applyingFoster to defendants who committed their offenses before that decision was released. State v. Evans, Washington App. No. 07CA45, 2008-Ohio-1446, at ¶¶ 25-26; State v. Miller, Washington App. No. 06CA57,2007-Ohio-6909, at ¶¶ 35-36; State v. Henthorn, Washington App. No. 06CA62, 2007-Ohio-2960, at ¶¶ 13-14; State v. Henry, Pickaway App. No. 06CA8, 2006-Ohio-6942, at ¶¶ 8-11; State v. Grimes, Washington App. *Page 16 
No. 06CA17, 2006-Ohio-6360, at ¶¶ 9-10. Other intermediate courts in Ohio have reached the same conclusion. State v. Cain, Franklin App. No. 06AP-682, 2007-Ohio-945, at ¶ 6; State v. Mallette, Cuyahoga App. No. 87984, 2007-Ohio-715, at ¶¶ 37-47; State v. McGhee, Shelby App. No. 17-06-05, 2006-Ohio-5162, at ¶ 16; State v. Durbin, Greene App. No. 2005-CA-134, 2006-Ohio-125, at ¶¶ 41-42; State v. Hildreth, Lorain App. No. 06CA008879, 2006-Ohio-5058, at ¶ 10. Thus, while we recognize Montgomery's need to preserve these issues for appeal, we overrule his third and fourth assignments of error.
 VI. Conclusion {¶ 33} We reverse the trial court's order awarding restitution to the Adams County Sheriff's Department's Furtherance of Justice Fund. In all other regards, we affirm the judgment below. We remand this case to the trial court for further proceedings consistent with this opinion.
 JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND THE CAUSE REMANDED. *Page 17 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART and that the CAUSE IS REMANDED. Appellant and Appellee shall split the costs.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 Abele, P.J. McFarland, J.: Concur in Judgment and Opinion. *Page 1