DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from an Athens County Common Pleas Court jury verdict finding Appellant, James Starett, guilty of felonious assault and domestic violence. As a result of the jury's determination of guilt, Appellant was sentenced to serve a term of eight years in prison, as well as an additional period of post-release control, in connection with the conviction for felonious assault, a felony of the second degree, in violation of *Page 2 
R.C. 2903.11(A)(1), and twelve months for domestic violence, a felony of the fourth degree, a violation of R.C. 2919.25(A), to be served consecutively.
 {¶ 2} On appeal, Appellant asserts that (1) the trial court erred by imposing a sentence without making a finding under R.C. 2951.03(B)(5) after the Appellant made specific objections to criminal convictions listed in the State's summary of the presentence investigation report; (2) the trial court erred by using an uncounseled prior conviction as an element to enhance his domestic violence conviction from a misdemeanor to a felony; (3) the trial court erred in sentencing Appellant to serve maximum and consecutive prison terms; and (4) trial counsel provided constitutionally ineffective assistance, in violation of theSixth Amendment to the United State Constitution and Section 10, Article I of the Ohio Constitution, in failing to object to the imposition of maximum, consecutive prison terms.
 {¶ 3} Because we find that the trial court made the requisite findings under R.C. 2951.03(B)(5) after Appellant objected to the State's summary of his pre-sentence investigation report, we overrule Appellant's first assignment of error. Because we find that Appellant's prior guilty plea to domestic violence in 2004 was not uncounseled and was properly used to enhance the current domestic violence offense to a felony, we overrule Appellant's second assignment of error. Further, because we find that the *Page 3 
trial court did not err in imposing maximum and consecutive sentences and that Appellant's counsel was not ineffective for failing to object to the imposition of these sentences, we overrule Appellant's third and fourth assignments of error. Accordingly, we affirm the judgment of the trial court.
 FACTS {¶ 4} On August 13, 2007, Appellant was indicted on a charge of felonious assault, a felony of the second degree, in violation of R.C. 2903.11(A)(1), and domestic violence, a felony of the fourth degree[1], in violation of R.C. 2929.25.(A). Prior to the jury trial of this matter, Appellant filed a motion to dismiss the felony domestic violence charge, arguing that a 2004 prior uncounseled plea could not be used to enhance the current domestic violence charge to a felony. The trial court denied that motion and the matter proceeded to trial. On September 12, 2007, a jury found Appellant guilty of both crimes as charged.
 {¶ 5} The trial court ordered that a pre-sentence investigation report be performed prior to sentencing; however, the record reveals that Appellant would not cooperate and that the report was unable to be performed. As such, the trial court was forced to rely upon the prior pre-sentence investigation report that was conducted in connection with the 2004 *Page 4 
domestic violence charge. Prior to sentencing, the State attempted to summarize the contents of the PSI report for the court, stating that Appellant had previously been convicted of theft of a corpse in Texas. Both Appellant and his counsel disputed the accuracy of this information. The court, prior to sentencing, clarified on the record that, with respect to this particular component of the report, the report stated that Appellant had been convicted of "theft from a person," not "theft of a person" or "theft of a corpse."
 {¶ 6} The trial court ultimately sentenced Appellant to a prison term of eight years on the felonious assault charge and twelve months on the domestic violence charge, to be served consecutively. It is from these convictions and sentences that Appellant now brings his timely appeal, assigning the following errors for our review.
 ASSIGNMENTS OF ERROR
"I. THE TRIAL COURT ERRED BY IMPOSING A SENTENCE WITHOUT MAKING A FINDING UNDER R.C. 2951.03(B)(5) AFTER THE DEFENDANT MADE SPECIFIC OBJECTIONS TO CRIMINAL CONVICTIONS LISTED IN THE STATE'S SUMMARY OF THE PRESENTENCE INVESTIGATION REPORT.
II. THE TRIAL COURT ERRED BY USING AN UNCOUNSELED PRIOR CONVICTION AS AN ELEMENT TO ENHANCE THE DEFENDANT'S DOMESTIC VIOLENCE CONVICTION FROM A MISDEMEANOR TO A FELONY.
III. THE TRIAL COURT ERRED IN SENTENCING MR. STARETT TO SERVE MAXIMUM AND CONSECUTIVE PRISON TERMS. *Page 5 FOURTEENTH AMENDMENT, UNITED STATES CONSTITUTION; SECTION 16, ARTICLE I, OHIO CONSTITUTION.
IV. TRIAL COUNSEL PROVIDED CONSTITUTIONALLY
INEFFECTIVE ASSISTANCE, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION, IN FAILING TO OBJECT TO THE IMPOSITION OF MAXIMUM, CONSECUTIVE PRISON TERMS."
 ASSIGNMENT OF ERROR I {¶ 7} In his first assignment of error, Appellant contends that the trial court erred by imposing a sentence without making a finding under R.C. 2951.03(B)(5) after Appellant made specific objections to criminal convictions listed in the State's summary of the pre-sentence investigation report. Appellant asserts that the specific issue to be decided is whether a trial court must make a finding under R.C. 2951.03(B)(5) when a defendant alleges that the summary given at sentencing of the PSI report contains an error.
 {¶ 8} R.C. 2951.03(B) provides in pertinent part as follows:
"(5) If the comments of the defendant or the defendant's counsel, the testimony they introduce, or any of the other information they introduce alleges any factual inaccuracy in the presentence [sic] investigation report or the summary of the report, the court shall do either of the following with respect to each alleged factual inaccuracy:
 (a) Make a finding as to the allegation; *Page 6 
 (b) Make a determination that no finding is necessary with respect to the allegation, because the factual matter will not be taken into account in the sentencing of the defendant." R.C. 2951.03(B)(5); State v. Platz, Washington App. No. 01CA33; 2002-Ohio-6149; State v. Collins, Gallia App. No. 03CA29, 2004-Ohio-3606.
 {¶ 9} Prior to sentencing, Appellant informed the trial court of an alleged inaccuracy in the PSI report, as summarized by the prosecution, namely that the report contained information that Appellant had been convicted of theft of a corpse in the state of Texas, a charge which Appellant asserted was untrue. Appellant argues that despite his allegation of this inaccuracy, the trial court did not make the findings as required by R.C. 2951.03(B)(5). We disagree.
 {¶ 10} It appears from the record that upon sentencing Appellant, the trial court referenced the PSI report that was conducted in connection with Appellant's 2004 domestic violence sentencing. A review of the transcript from the sentencing hearing reveals that although an accelerated PSI report was ordered to be performed prior to the sentencing at issue, Appellant apparently refused to cooperate. As a result, a new PSI was not able to be completed and, as such, the trial court relied on the 2004 PSI report instead.
 {¶ 11} The record reveals that prior to the trial court's on the record review of the 2004 PSI report, the State attempted to summarize the contents of the report for the court, stating that the report indicated that Appellant had *Page 7 
a prior conviction for theft of a corpse. In response to the State's summary of the report and reference to a conviction for theft of a corpse, Appellant's counsel informed the trial court that Appellant disputed the accuracy of that portion of the report. Later, the trial court summarized, on the record, Appellant's prior criminal history, as contained in the 2004 PSI report that was before him, as follows:
"* * * so, here's what, here's what the Court has received and this is as of 2004 because I think there was not only the PSI but a violation report typed on April 28, 2004. In 1996 we've got the Texas,whatever happened in Texas but it's indicated there were convictions ontwo counts of uh, burglary of a building and theft from a person ormaybe theft of a person, I don't know. 2000 there is a DUI in Athens County. 2000 DUI in Tennessee. Criminal Trespass 2001 in Tennessee. In 2002 in Athens County there is aggravated assault, menacing, criminal damaging. Between 2001 and 2003 there were six disorderly conducts. In 2004 we've got the domestic violence which was the underlying for the domestic which made this underlying offense a felony and then 2003, a second degree burglary was reduced to a fourth degree burglary. Mr. Starett was placed on community control, went to SEPTA, and that was revoked and the Court had to send him to prison on that. So that's uh, if anybody wants to weigh in on anything else that's the record that the Court has received." (Emphasis added).
 {¶ 12} In response to the summary by the court, the State informed the court of an additional charge of DUI, drug paraphernalia and operating without a license in 2006. When given an opportunity to address the court prior to sentencing, Appellant again disputed the accuracy of the report with respect to the theft of a corpse, or theft of a person, conviction, stating that he felt like he was being "judged for it and it's not on record anywhere." In *Page 8 
response to the concerns raised by Appellant, the following exchange took place between Appellant and the trial court:
"BY THE JUDGE: Thank you. I don't uh, there is nothing I have thatsays theft of a corpse. It says, uh, that 96 thing says, theft from aperson. So uh,
BY THE DEFENDANT: Maybe the prosecutor would like to explain because I have, he obviously has something on it, I'm not understanding it because I feel like I'm being judged for it.
BY THE JUDGE: Well I think you are being judged for everything that you've done so-" (Emphasis added).
 {¶ 13} We hold that although the trial court did not expressly make specific findings under R.C. 2951.03(B)(5), the court did find on the record that the report did not contain any information indicating Appellant had been convicted of theft of a corpse or theft of a person, but rather that the charge involved theft from a person. The court further stated, on the record, that Appellant was being judged for everything he had done, referring to Appellant's extensive criminal record, aside from the Texas conviction for theft from a person. There is nothing in the record to suggest that the trial court took into consideration the improperly reported conviction when imposing sentence. Therefore, even if we were to hold that the trial court did not make the required finding, the failure would be, at most, harmless error."State v. Othman, 149 Ohio App.3d 82, 2002-Ohio-4029, 775 N.E.2d 903; citing State v. Griffin, (Feb. 12, 1998), Washington App. No. 97CA17, *Page 9 1998 WL 102584; See, also, State v. Collins, Gallia App. No. 03CA29,2004-Ohio-3606.
 {¶ 14} Accordingly, we find that even if the trial court arguably erred in failing to follow the requisite procedures of R.C. 2951.03(B)(5), any such error would not have affected a substantive right and thus, was harmless. State v. Platz, supra; Crim. R. 52. Therefore, Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II {¶ 15} Appellant contends, in his second assignment of error, that the trial court erred by using an uncounseled prior conviction as an element to enhance the defendant's domestic violence conviction from a misdemeanor to a felony. Appellant contends that the specific issue to be decided is whether an uncounseled plea entered to a prior conviction resulting in jail time may be used as an element to enhance a subsequent charge from a misdemeanor to a felony. Thus, primarily at issue in this appeal is whether Appellant's 2004 domestic violence conviction was an uncounseled conviction, which could not be used to enhance the degree of his current conviction to a fourth degree felony.
 {¶ 16} If the instant domestic violence charge is considered a first offense, then it is deemed a misdemeanor of the first degree under *Page 10 
R.C. 2919.25(D)(2). However, pursuant to R.C. 2919.25(D)(3), the offense becomes a fourth degree felony if it is considered a second offense. The crux of Appellant's position is that the state should not be allowed to use his prior domestic violence conviction to enhance the penalty for the current offense because the prior conviction is constitutionally infirm. He bases his argument on the Supreme Court decision of State v.Brooke, 113 Ohio St.3d 199, 2007-Ohio-1533, which prohibits the use of uncounseled convictions to enhance a penalty in a subsequent conviction.
 {¶ 17} In Brooke, the Supreme Court of Ohio set forth the following rule of law regarding uncounseled convictions: "Generally, a past conviction cannot be attacked in a subsequent case. However, there is a limited right to collaterally attack a conviction when the state proposes to use the past conviction to enhance the penalty of a later criminal offense. A conviction obtained against a defendant who is without counsel, or its corollary, an uncounseled conviction obtained without a valid waiver of the right to counsel, has been recognized as constitutionally infirm. State v. Brandon (1989), 45 Ohio St.3d 85, 86;Nichols v. United States (1994), 511 U.S. 738." Id. at ¶ 9. Thus, "[a]n uncounseled misdemeanor conviction cannot be used to enhance a sentence in a later conviction. State v. Brandon at 87. An uncounseled conviction is one where the defendant was not represented by *Page 11 
counsel nor made a knowing and intelligent waiver of counsel." State v.Neely, 11th Dist. No. 2007-L-054, 2007-Ohio-6243, ¶ 13, citing State v.Carrion (1992), 84 Ohio App.3d 27, 31.
 {¶ 18} Although Appellant was not represented by an attorney during the 2004 plea hearing, he may not have been "uncounseled." State v.Bonds, Cuyahoga App. No. 83866, 2004-Ohio-3483 at ¶ 10. An uncounseled conviction is one where the defendant was not represented by counsel and failed to make a knowing and intelligent waiver of counsel." Id.; citingState v. Vales (Feb. 24, 2000), Cuyahoga App. No. 75653, citingState v. Carrion (1992), 84 Ohio App.3d 27, 31, 616 N.E.2d 261. A defendant who is afforded the right to counsel but rejects that right has not suffered from an uncounseled conviction. Id.
 {¶ 19} When an Appellant contests the use of a prior conviction on the ground that he or she has entered an uncounseled plea in the prior case, the burden is on the Appellant to introduce evidence to make a prima-facie showing of constitutional infirmity. Id. at ¶ 14. Thus, "[w]here questions arise concerning a prior conviction, a reviewing court must presume all underlying proceedings were conducted in accordance with the rules of law and a[n] [Appellant] must introduce evidence to the contrary in order to establish a prima-facie showing of constitutional infirmity." Brooke at ¶ 11. *Page 12 
Once the prima-facie case is made, then the burden shifts to the state to prove that the right to counsel was properly waived. Id. To do so, the state must show there was a knowing, voluntary, and intelligent waiver of the right to counsel under the Sixth Amendment. Id. at ¶ 25.
 {¶ 20} In determining whether the right to counsel was properly waived in a prior case, a distinction is made between "serious offenses" and "petty offenses." Neely at ¶ 20. Crim. R. 2(C) defines a "serious offense" as "any felony, and any misdemeanor for which the penalty prescribed by law includes confinement for more than six months." Crim. R. 2(D) defines a "petty offense" as "a misdemeanor other than a serious offense." In this case, Appellant's first domestic violence charge was a misdemeanor of the first degree. R.C. 2919.25(D)(2). A misdemeanor of the first degree is punishable by a maximum term of imprisonment of six months. R.C. 2929.24(A)(1). Therefore, it is considered a petty offense.
 {¶ 21} Crim. R. 11(E) sets forth the requirements for accepting a plea in cases involving petty offenses. It provides:
"(E) In misdemeanor cases involving petty offenses the court may refuse to accept a plea of guilty or no contest, and shall not accept such pleas without first informing the defendant of the effect of the plea of guilty, no contest, and not guilty.
The counsel provisions of Crim. R. 44(B) and (C) apply to division (E) of this rule." *Page 13 
Crim. R. 44(B) and (C) provide as follows:
"(B) Counsel in petty offenses
Where a defendant charged with a petty offense is unable to obtain counsel, the court may assign counsel to represent him. When a defendant charged with a petty offense is unable to obtain counsel, no sentence of confinement may be imposed upon him, unless after being fully advised by the court, he knowingly, intelligently, and voluntarily waives assignment of counsel.
(C) Waiver of counsel
Waiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22. In addition, in serious offense cases the waiver shall be in writing."
 {¶ 22} Crim. R. 22 states that "in petty offense cases all waivers of counsel required by Rule 44(B) shall be recorded." Thus, according to these rules, "[w]aiver of counsel must be made on the record in open court, and in cases involving serious offenses where the penalty includes confinement for more than six months, the waiver must also be in writing and filed with the court." Brooke at paragraph two of the syllabus.
 {¶ 23} Appellant argues that he met his initial burden of establishing that his plea in 2004 was uncounseled and maintains that the state cannot satisfy its burden to establish that his plea was knowingly and voluntarily made. He relies on the transcript from the plea hearing to support his position. The State also relies on the same transcript in support of its position that the waiver of counsel was knowingly and intelligently made. Further, the State relies on the written waiver, which was signed by *Page 14 
Appellant and made part of the record for the 2004 domestic violence conviction. The State introduced both the transcript and the written waiver as exhibits in the underlying trial of this matter.
 {¶ 24} A review of the transcript reveals the following colloquy in open court.
"Court: * * * On the domestic violence, you heard what I told the other gentleman as far as being a precursor offense, uh, that if convicted of that, a second offense would be a felony? Do you understand that? Do you know what plea you wish to issue, enter to the domestic violence? Not guilty?
Starett: Guilty. Guilty.
Court: If you wish to enter a plea of guilty, uh, you understand you
have a right to an attorney? If you cannot afford an attorney, one will be appointed for you.
Starett: There's not one needed.
Court: Hm?
Starett: It's not one needed.
Court: All right. There's a form, uh, on the desk there called Waiver
of Counsel. I'd like you to take a minute and read through that. What that says, uh, is that you, uh, understand that you do have a right to an attorney but you choose not to have one.
Starett: No contest, cause I really don't know what happened, sir. Uh, I know one thing, uh. I'd like to say my alcohol [unintelligible]. That's how it happened. I'm sure I'm guilty of it, cause I was drinking, so. I mean, no contest. I'm guilty.
Court: Questions on the waiver of counsel?
Starett:
 No." *Page 15 
 {¶ 25} Further, the written waiver provided that Appellant understood that he had a constitutional right to counsel, that if he was unable to hire a private lawyer the court would assign one to represent him, that he had a right to a reasonable continuance to obtain counsel, that there may be defenses to the charges to which he was unaware and that it would be to his advantage to obtain counsel, and that he was giving up his right to be represented by counsel and choosing to represent himself. The written waiver was signed by Appellant and, as set forth above, when questioned by the court if he had any questions regarding the written waiver, Appellant responded that he did not.
 {¶ 26} In light of these facts, we find there was sufficient evidence in the record to demonstrate that the 2004 waiver occurred in open court, and although not mandated for a petty offense, that the waiver was put into writing and made part of the record. There is also evidence that the trial court explained to Appellant in open court, that if he signed the waiver form, he was acknowledging that he understood that he was giving up his right to counsel, and also that the crime he was pleading no contest to was a precursor offense that would enhance a second offense to a felony. Thus, Appellant was afforded the right to counsel, which he rejected. As such, his prior plea and conviction were not uncounseled. State v. Carrion, supra at *Page 16 
31. Therefore, we conclude that the trial court did not err in allowing the prior domestic violence conviction to be used to enhance the subsequent offense. Accordingly, Appellant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III {¶ 27} In his third assignment of error, Appellant contends that the trial court erred in sentencing him to serve maximum and consecutive prison terms. Appellant asserts that the specific issue to be decided is whether the Supreme Court of Ohio's remedy in State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, violates the due process clauses of the state and federal constitutions, and whether the Ohio Revised Code, in its current state, authorizes maximum and consecutive prison terms. In particular, Appellant argues that the court's holding inFoster deprived him of his liberty interest in the statutory presumption in favor of less-than-maximum and concurrent sentences, an argument which we recently considered in State v. Montgomery, Adams App. No. 07CA858, 2008-Ohio-4753. In Montgomery, we noted that "we have consistently held that the trial court does not violate due process principles by following the remedy mandated by the Supreme Court of Ohio in Foster," and thus, we adhered to that ruling once again. *Page 17 
 {¶ 28} In Foster, the Supreme Court of Ohio found that several of Ohio's sentencing statutes, including R.C. 2929.14(B), were unconstitutional to the extent that they required judicial fact-finding before imposition of maximum, consecutive, or greater-than-minimum sentences. Foster at paragraphs one, three, and five of the syllabus. Applying the remedy used by the Supreme Court of the United States inUnited States v. Booker (2005), 543 U.S. 220, 125 S.Ct. 738,160 L.Ed.2d 621, the court severed the offending unconstitutional provisions in their entirety from the statutes. Foster at paragraphs two, four, and six of the syllabus, and ¶ 99. The court stated that trial courts now "have full discretion to impose a prison sentence within the statutory range [of R.C. 2929.14(A) ] and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id., at paragraph seven of the syllabus.
 {¶ 29} The Supreme Court released its decision in Foster on February 27, 2006, and the trial court entered Appellant's sentences on September 26, 2007. Although he could have raised the argument that his sentences violated due-process principles with the trial court so that it could address the issue, he failed to do so. By not raising this argument in the trial court, *Page 18 
Appellant has forfeited any alleged error regarding his sentence.Montgomery at ¶ 22; citing State v. Payne, 114 Ohio St.3d 502,2007-Ohio-4642, 873 N.E.2d 306, at ¶ 21-23.
 {¶ 30} Nonetheless, and as in Montgomery, Appellant relies onHicks v. Oklahoma (1980), 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175, for the proposition that, at the time he committed his crimes, Senate Bill 2 created a liberty interest in the statutory presumption that the sentences imposed would consist of a minimum term of imprisonment served concurrent to each other. Appellant's reliance is misplaced.
 {¶ 31} In Hicks, the trial court instructed the jury that if it found the defendant guilty, it must sentence him to 40-years imprisonment under the habitual offender statute. The jury found the defendant guilty and imposed the mandatory 40-year term. Between the defendant's sentencing and his appeal, the Oklahoma Court of Criminal Appeals struck down this provision of the habitual offender statute. On appeal,Hicks sought to have his sentence set aside in light of the unconstitutionality of the provision mandating a sentence of 40-years. The Court of Criminal Appeals affirmed his sentence, concluding that the defendant suffered no prejudice because the sentence handed down was within the range that could have been imposed for his offense. The Supreme Court of the United States reversed. Noting that the *Page 19 
defendant had "a substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion," the court concluded that the judgment of the Court of Criminal Appeals "denied the [defendant] the jury sentence to which he was entitled under state law, simply on the frail conjecture that a jury might have imposed a sentence equally as harsh as that mandated by the invalid habitual offender provision." Id. at 346.
 {¶ 32} In Hicks, then, the defendant had an absolute statutory right to have the jury set his term of imprisonment, a right that was impaired by the failure of the jury to know that it could hand down a sentence less than 40-years imprisonment. In contrast, Appellant had no entitlement to minimum, less-than-maximum, or concurrent sentences, either at the time he committed his offense or at the time the court entered his sentence. As we have previously explained,
 "[t]he law before Foster never mandated imposition of minimum sentences on offenders who had not previously served a prison term, as appellant asks us to do here. By demanding application of a presumption in favor of a minimum sentence, but not allowing any means by which the presumption can be overcome, `appellant essentially seeks the benefit of a state of law that never existed.'" State v. Hardesty, Pickaway App. No. 07CA2, 2007-Ohio-3889, at ¶ 12, quoting State v. Rosado, Cuyahoga App. No. 88504, 2007-Ohio-2782, ¶ 7, quoting in turn State v. Paynter, 5th Dist. No. CT2006-0034, 2006-Ohio-5542, at ¶ 39. *Page 20 
Because the presumption against maximum and consecutive sentences could be rebutted, the maximum and minimum terms of imprisonment remained the same before and after Foster. State v. VanHoose, Pike App. No. 07CA765,2008-Ohio-112, at ¶ 26. Thus, Appellant has not been deprived of a liberty interest by the trial court's application of the Foster remedy in sentencing him. See State v. Torok, Ashtabula App. Nos. 2007-A-0001 2007-A-0002, 2008-Ohio-732, at ¶¶ 53-56 (rejecting the argument thatFoster deprived defendants of a liberty interest in the presumption in favor of minimum, concurrent sentences).
 {¶ 33} Appellant also relies on Hicks for the proposition that theFoster remedy deprived him of his "substantial liberty interest in the appellate procedures devised by the state legislature to ensure compliance with the statutory [sentencing] scheme." Again, we considered this exact argument in State v. Montgomery, supra. As inMontgomery, Appellant does not explain how his right to meaningful appellate review has been altered by the court's decision in Foster.Montgomery at ¶ 26. In any case, we have explained that "`[a defendant's] right to appeal any sentence that was contrary to law remained the same before and after Foster.'" State v. Shepherd, Scioto App. No. 06CA3106, 2008-Ohio-3350, at ¶ 11, quoting VanHoose at ¶ 26. *Page 21 
 {¶ 34} Finally, Appellant argues that in addition to violating his right to due process, his sentences were illegal because consecutive sentences are no longer supported by Ohio law. Appellant argues that the only authorization for consecutive sentences is found in R.C. 2929.14(E)(4), which was severed by the Foster court. However, this particular issue has been squarely addressed by the Seventh District Court of Appeals in State v. Buggs, Mahoning App. No. 07-MA-187,2008-Ohio-4809, which relied on its previous decision in State v.Hogan, Mahoning App. No. 06MA152, 2007-Ohio-3334 at ¶ 15, where it held that
 "`the common law vests trial courts with the authority to impose consecutive sentences without a statute to the contrary." As we observed in Hogan, that argument ignores the Foster decision where the Ohio Supreme Court held "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, at paragraph seven of the syllabus. The Foster court also observed, "If an offender is sentenced to multiple prison terms, the court is not barred from requiring those terms to be served consecutively. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, at ¶ 105.'"
Therefore, consecutive sentences are authorized under the current state of the law.
 {¶ 35} Further, with respect to the imposition of consecutive
sentences, the Unites States Supreme Court recently reasoned that:
 "Most States continue the common-law tradition: They entrust to judges' unfettered discretion the decision whether sentences for discrete offenses *Page 22 
shall be served consecutively or concurrently. In some States, sentences for multiple offenses are presumed to run consecutively, but sentencing judges may order concurrent sentences upon finding cause therefore. * * * It is undisputed that States may proceed on the first two tracks without transgressing the Sixth Amendment." Oregon v. Ice (2009), ___ S.Ct. ___, 2009 WL 77896.
 Thus, Ohio's revised sentencing scheme, post-Foster, which essentially allows trial judges the discretion to impose or not impose consecutive sentences, passes constitutional muster, according to Oregon, supra.[2]
 {¶ 36} Accordingly, because Appellant has failed to demonstrate that the trial court's order requiring maximum and consecutive sentences has resulted in a denial of due process, either at the trial or appellate level, and because Appellant has failed to demonstrate that consecutive sentences are contrary to law, we conclude that his third assignment of error is without merit and is therefore overruled.
 ASSIGNMENT OF ERROR IV {¶ 37} In his fourth assignment of error, Appellant contends that trial counsel provided constitutionally ineffective assistance in violation of the Sixth Amendment to the United States Constitution and Section 10, Article I *Page 23 
of the Ohio Constitution, in failing to object to the imposition of maximum, consecutive prison terms.
 {¶ 38} We begin our review of Appellant's assigned error by considering the test for determining ineffective assistance of counsel. To obtain the reversal of a conviction on grounds of ineffective assistance of counsel, an appellant must show (1) his counsel's performance was deficient, and (2) such deficient performance prejudiced the defense so as to deprive him of a fair trial. State v.Shepherd, Scioto App. No. 3106, 2008-Ohio-3350; citing Strickland v.Washington (1984), 466 U.S. 668, 687; 104 S.Ct. 2052; State v. Issa
(2001), 93 Ohio St.3d 49, 67, 2001-Ohio-1290, 752 N.E.2d 904. To demonstrate prejudice, an appellant must show a reasonable probability exists that, but for the alleged errors, the result of the proceeding would have been different. State v. White (1998), 82 Ohio St.3d 16, 23,1998-Ohio-363, 693 N.E.2d 772; State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373, at paragraph three of the syllabus.
 {¶ 39} Because the trial court did not err by imposing maximum and consecutive sentences, Appellant cannot show that trial counsel was constitutionally ineffective for failing to raise this argument.Shepherd, supra. Further, because the imposition of a non-minimum sentence in this case did not violate due process principles, Appellant cannot show either a *Page 24 
deficient performance or prejudice. Thus, Appellant is unable to demonstrate any prejudice as a result of trial counsel's failure to object to the imposition of maximum and consecutive sentences. Therefore, and in light of our disposition of Appellant's third assignment of error, we find no merit in Appellant's fourth assignment of error.
 {¶ 40} Accordingly, we affirm the judgment of the trial court.
 JUDGMENT AFFIRMED. *Page 25 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J.: Concurs in Judgment and Opinion as to Assignments of Error I, II, and IV, and Concurs in Judgment Only as to Assignment of Error III. Abele, J.: Concurs in Judgment and Opinion.
[1] Because Appellant had previously pled guilty to and been convicted of a misdemeanor domestic violence charge in 2004, the current domestic violence charge was enhanced, by virtue of R.C. 2919.25(D)(3), to a fourth degree felony.
[2] The particular question in Oregon v. Ice, supra, however, dealt with whether Oregon's sentencing scheme, which constrains "judges' discretion by requiring them to find certain facts before imposing consecutive, rather than concurrent, sentences[,]" transgresses theSixth Amendment "as construed in Apprendi and Blakely." In response to that question, the United States Supreme Court held that "in light of historical practice and the authority of States over administration of their criminal justice systems, that the Sixth Amendment does not exclude Oregon's choice." Thus, based upon this reasoning, it appears that Ohio's sentencing scheme, even pre-Foster, which required judicial fact-finding, would have passed scrutiny under Oregon v. Ice, at least insofar as its application to the imposition of consecutive sentences. *Page 1